# United States Court of Appeals
# for the Federal Circuit

---

**MARY REEVES (SUBSTITUTED FOR CORBY REEVES),**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7085

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-1951, Judge Alan G. Lance, Sr.

---

Decided: June 14, 2012

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

ELIZABETH M. HOSFORD, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, Jeanne E. Davidson, Director, and BRIAN M. SIMKIN, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy

Assistant General Counsel, and JONATHAN E. TAYLOR, Attorney, United States Department of Veterans Affairs, of Washington, DC.

——————————

Before BRYSON, MAYER, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MAYER.
Dissenting opinion filed by *Circuit Judge* BRYSON.

MAYER, *Circuit Judge*.

Mary Reeves ("Mrs. Reeves"), the surviving spouse of veteran Corby Reeves ("Reeves"), appeals a judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") that rejected Reeves' assertion of clear and unmistakable error ("CUE") in an April 1983 decision of the Board of Veterans' Appeals ("board"). *See Reeves v. Shinseki*, No. 08-1951, 2010 U.S. App. Vet. Claims LEXIS 2203 (Vet. App. 2010) ("*Veterans Court Decision*"). Because we conclude that the Veterans Court misinterpreted 38 U.S.C. § 1154(b) when it rejected Reeves' CUE claim, we reverse and remand.

BACKGROUND

Reeves served in the United States Army from June 1942 until November 1945. He worked as a heavy mortar crewman during several combat offensives and was awarded three Bronze Stars. In September 1981, Reeves filed a claim seeking service-connected disability benefits for bilateral sensorineural hearing loss. Reeves stated: "During my service I experienced a hearing loss due to firing [an] 81 mm mortar and [from] treatment of malaria with quinine. . . . My hearing, especially the right ear, has been deteriorating ever since my active duty." Reeves also submitted a medical opinion from his physician, R.L. Dunlap, M.D., who stated that he had diagnosed Reeves

with bilateral, nerve-type hearing loss in 1962 and that he attributed this hearing impairment to "noise exposure" or to treatment with quinine for malaria.[1] In addition, Reeves submitted records of an audiogram, conducted soon after his claim was filed, which indicated that he suffered from "severe bilateral nerve-type hearing loss."

At a hearing before a Department of Veterans Affairs ("VA") rating board in May 1982, Reeves testified that he had first noticed his hearing loss in the summer of 1946 "when he could not hear a watch tick." Mrs. Reeves also testified at the hearing, averring that when she married Reeves in 1948 she had noticed that he suffered from hearing loss.

In addition, Reeves submitted statements from officers with whom he had served during World War II. These officers stated that he had been exposed to noise from mortar fire and that he had been treated for malaria while in service. Major Robert P. McGraw, who served with Reeves in Company D of the 338th Infantry, stated that Reeves "had to be with his mortars" during training exercises and during several combat offensives. McGraw further asserted that "[b]eing so close to these guns during the extensive firing they received over such a long period of time, the ear could be easily damaged from the muzzle blast of the 81 mm mortar."

In April 1983, the board denied Reeves' claim. Although it acknowledged that he was exposed to mortar fire and had been treated for malaria while in service, the board noted that "the earliest clinical recording of hearing impairment was by [Reeves'] private physician in Novem-

---

[1] The government has been unable to produce copies of Reeves' service medical records, explaining that they may have been destroyed in a 1973 fire at the National Personnel Records Center.

ber 1962." The board concluded that the hearing loss that had been documented in 1962 was "too remote from [Reeves'] active service" to be caused by either his exposure to mortar fire or treatment for malaria while in service. The board's decision became final when Reeves did not file an appeal.

In 2004, the board granted Reeves' application to reopen his claim. *See* 38 U.S.C. § 5108 (providing that a claim will be reopened "if new and material evidence is presented or secured"). The board cited to new evidence from a physician who stated that he had treated Reeves from 1946 to 1954 and that Reeves had experienced "hearing difficulties" during this time period. The physician further asserted that Reeves' hearing problems "could have resulted from his [military] service, i.e. the firing of the 81 mm mortar and the treatment of malaria with quinine." The board also cited to a July 2001 statement from another physician, as well as a May 2004 statement from a VA medical examiner, both of which indicated that Reeves' hearing loss was likely due to noise exposure while in the military. Accordingly, the board determined that the record contained sufficient evidence to establish that Reeves' hearing impairment was incurred during his military service. It therefore awarded him service-connected disability benefits, with an effective date of June 13, 2002, the date he filed his application to reopen his claim.

In December 2006, Reeves filed a motion for revision of the 1983 board decision, arguing that he was entitled to an earlier effective date for the award of disability benefits. He asserted that the 1983 decision contained CUE because the board had failed to apply the combat presumption contained in section 1154(b). The board rejected this argument, however, stating that the application of the combat presumption was unnecessary

because the 1983 decision accepted the fact that Reeves had suffered acoustic trauma in service. The board explained that "[s]ince actual evidence of noise exposure in service was available, the Board had no need to apply the combat presumption."

The board acknowledged that the 1983 decision was "not a model of legal and factual exposition, at least by current standards." It noted that in evaluating whether there was a nexus between Reeves' in-service injury and his subsequent hearing disability, the board reached a conclusion on nexus which might have been "based on the expertise of one of the three signatory Board members, who was a Medical Doctor." While relying upon the medical expertise of a board member would be "highly improper" under current law, the board determined that "current standards [were] not applicable" in the context of a claim alleging CUE in an earlier board decision.

On appeal, the Veterans Court affirmed. It rejected Reeves' assertion that the evidence of record in 1983 was such that the board had no choice but to resolve in his favor any doubt on the question of whether his hearing disability was incurred in service. *Veterans Court Decision*, 2010 U.S. App. Vet. Claims LEXIS 2203, at \*3. The court also determined that "under the law extant in 1983, the Board was not precluded from relying upon its own medical judgment" in concluding that Reeves' hearing loss had not been incurred in service. *Id.* at \*4. The court stated, moreover, that "a mere disagreement with how the facts were weighed or evaluated is not enough to substantiate a CUE claim." *Id.* at \*3-4.

On February 15, 2011, Reeves filed a notice of appeal with this court. He died three days later. On April 14, 2011, Mrs. Reeves filed a motion to be substituted for her husband on appeal. This motion, which included a copy of

Reeves' certified death certificate, stated that Mrs. Reeves was entitled to receive any benefits that were due and payable to her husband as of the date of his death. On June 1, 2011, this court granted Mrs. Reeves' motion to substitute for her husband on appeal, without prejudice to the government's ability to make arguments in its appeal brief on the question of whether substitution was appropriate.

## DISCUSSION

This court's authority to review decisions of the Veterans Court is circumscribed by statute. *See* 38 U.S.C. § 7292. Although we have no authority to review challenges to factual determinations or the application of a statute or regulation to the facts of a particular case, "[w]e have recognized . . . that where adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law." *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004).

The government makes two principal arguments. First, it contends that Mrs. Reeves has no standing to be substituted for her husband on appeal because she has not filed a claim for accrued benefits with the VA. Second, it argues that there is no CUE in the 1983 board decision because the failure to apply the combat presumption contained in section 1154(b)[2] was harmless error. We find neither of these arguments persuasive.

I. *Substitution*

Pursuant to Rule 43 of the Federal Rules of Appellate Procedure, if a party dies while his appeal is pending before an appellate court, his personal representative may

---

[2] Section 1154(b) was previously codified at 38 U.S.C. § 354(b).

be substituted for him: "If a party dies after a notice of appeal has been filed or while a proceeding is pending in the court of appeals, the decedent's personal representative may be substituted as a party on motion filed with the circuit clerk by the representative or by any party." Fed. R. App. P. 43(a)(1). There is no dispute that Reeves died after he had filed his notice of appeal with this court. There is likewise no dispute that Mrs. Reeves is her husband's personal representative as his surviving spouse, and that she filed a timely motion to be substituted for him on appeal. Mrs. Reeves, therefore, meets the prerequisites for substitution under Rule 43(a)(1).

As the government correctly notes, however, "[t]he question of substitution is separate from that of standing." *Richard v. West*, 161 F.3d 719, 722 (Fed. Cir. 1998). Procedural rules, such as Rule 43(a)(1), "simply describe[] the *manner* in which parties are to be substituted in federal court once it is determined that the applicable substantive law allows the action to survive a party's death." *Robertson v. Wegmann*, 436 U.S. 584, 587 n.3 (1978) (citations and internal quotation marks omitted). The government argues that Mrs. Reeves has no standing to be substituted for her deceased husband. It asserts that "mere eligibility for accrued benefits is not enough" to confer standing and that the filing of an accrued-benefits claim is required before a survivor can be substituted on a pending appeal. We disagree. Even assuming *arguendo* that standing can be established only if a surviving spouse files an accrued-benefits claim, Mrs. Reeves' motion to be substituted for her husband qualifies as an informal claim for accrued benefits.[3] *See Kelsey v. West*,

---

[3] When a veteran dies, his right to continuing disability compensation ends. *See* 38 U.S.C. § 5112(b)(1) (providing that a veteran's right to disability compensation terminates on the last day of the month before the

13 Vet. App. 437, 438 (Vet. App. 2000) (explaining that a notice of appeal, which contained a veteran's death notice, constituted "an informal, derivative, claim for accrued benefits" by the veteran's surviving spouse); *Landicho v. Brown*, 7 Vet. App. 42, 50 (Vet. App. 1994) (concluding that the filing of a motion for substitution, which was accompanied by the veteran's death notice, qualified as an informal claim for accrued benefits). Indeed, the VA's current practice is to treat motions for substitution and claims for accrued benefits as "one and the same." Substitution of Party in Case of Claimant's Death, VA Fast Letter 10-30 7 (Aug. 10, 2010) ("To request substitution, an eligible survivor may file either a claim for accrued benefits or a request for substitution. Accrued benefits claims and requests for substitution shall be treated as one and the same.").

As we explained in *Rodriguez v. West*, 189 F.3d 1351, 1353 (Fed. Cir. 1992), any communication can qualify as an informal claim if it: (1) is in writing; (2) indicates an intent to apply for veterans' benefits; and (3) identifies the particular benefits sought. *See* 38 C.F.R. § 3.155. Here, Mrs. Reeves' motion for substitution, which was filed on April 14, 2011, stated that: (1) her husband, a claimant seeking VA disability benefits, had an appeal pending before this court when he died on February 18, 2011; and (2) she, as Reeves' surviving spouse, was eligible to re-

veteran's death). Pursuant to 38 U.S.C. § 5121, however, certain individuals—typically the surviving spouse—have the right to obtain the accrued benefits that were due and payable to the veteran at the time of his death. An accrued-benefits claim is derivative of the deceased veteran's claim and "incorporates any prior adjudications of the service-connection issue on claims brought by the veteran." *Padgett v. Nicholson*, 473 F.3d 1364, 1369 (Fed. Cir. 2007) (citations and internal quotation marks omitted).

ceive the accrued benefits due as of the date of his death pursuant to 38 U.S.C. § 5121(a). Mrs. Reeves attached a certified copy of her husband's death certificate to her motion seeking substitution. Because Mrs. Reeves' motion for substitution clearly evinced an intent to obtain the benefits due and payable to her husband as of the date of his death, it qualifies as an informal claim for accrued benefits.

The Supreme Court allows substitution in situations analogous to that presented here. Recently, in *Henderson v. Shinseki*, the Court granted the motion of a surviving spouse to be substituted for her veteran husband who died while his case was pending before the Court. 131 S. Ct. 624 (2010). Significantly, the surviving spouse was allowed to substitute notwithstanding the fact that she had not yet filed an accrued-benefits claim with the VA. We see no reason why this court should not follow a similar approach.

In *Henderson*, the surviving spouse's motion to substitute stated that she "intend[ed] to submit all necessary materials to obtain accrued benefits with the VA," but did not indicate that she had previously filed an accrued-benefits claim. The government attempts to distinguish *Henderson* by arguing that Mrs. Reeves might have had standing to substitute if her motion to substitute had stated that she intended to file an accrued-benefits claim with the VA in the future. We do not find this reasoning persuasive. Standing is determined based upon the facts as they exist at the time the motion to substitute is filed. *See Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) ("Article III standing, like other bases of jurisdiction, generally must be present at the inception of the lawsuit."); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("The jurisdiction of the Court depends upon the state of things at the time

of the action brought." (citations and internal quotation marks omitted)). Accordingly, whether or not a survivor states that he or she "intends" to file an accrued-benefits claim with the VA at some point in the future is not dispositive on the question of whether the survivor has standing to substitute on a pending appeal. *See Park v. Forest Serv.*, 205 F.3d 1034, 1037-38 (8th Cir. 2000) (explaining that events occurring after the filing of a complaint cannot be used to establish standing).

The government argues that a survivor should be required to file an accrued-benefits claim with the VA before being allowed to substitute on appeal because this court is not permitted to make factual findings on the issue of whether a particular individual qualifies as an appropriate accrued-benefits claimant. In situations in which the appropriate accrued-benefits beneficiary is in dispute, it might be appropriate to remand for a resolution of this issue. *See Zevalkink v. Brown*, 102 F.3d 1236, 1244 (Fed. Cir. 1996). Here, however, there is no dispute that Mrs. Reeves, as the surviving spouse, is entitled to any benefits due and unpaid to her husband at the time of his death. *See* 38 U.S.C. § 5121(a)(2)(A); *see also Bailey v. Principi*, 351 F.3d 1381, 1384 (Fed. Cir. 2003) ("[W]hen the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the . . . claim, this court has treated the question . . . as a matter of law that we are authorized by statute to address."); *Texas Instruments, Inc. v. United States*, 922 F.2d 810, 815 (Fed. Cir. 1990) (explaining that there is no need to remand a case to determine an issue "which legally [could] be decided in only one way" (citations and internal quotation marks omitted)). Because there is no dispute that Mrs. Reeves is entitled to receive any benefits due and payable to her husband at the time of his death, we see no reason that she should be required to file a sepa-

rate accrued-benefits claim with the VA before being allowed to substitute for her husband on appeal.[4]

The government's argument that Mrs. Reeves must file a motion for accrued benefits with the VA before this court can allow her to substitute is an attempt to superimpose the VA's claim processing requirements upon this court's rules for substitution. The VA, quite clearly, has no authority to dictate to this court the procedures that must be followed when allowing a claimant to substitute on a pending appeal.

"The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim . . . ." *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009); *see also Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006) ("The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them."). Notwithstanding the recent death of her husband, Mrs. Reeves filed a timely motion to substitute—which clearly indicated an intent to seek accrued benefits—and has diligently prosecuted her appeal before this court. Under

---

[4] This does not mean that on remand the VA cannot have Mrs. Reeves file additional paperwork if necessary to confirm her status as the appropriate accrued-benefits beneficiary before awarding her any benefits. *See* 38 U.S.C. § 5121(c) ("If a claimant's application [for accrued benefits] is incomplete at the time it is originally submitted, the Secretary shall notify the claimant of the evidence necessary to complete the application. If such evidence is not received within one year from the date of such notification, no accrued benefits may be paid."). We hold only that Mrs. Reeves was not required to file an accrued-benefits claim with the VA before being allowed to substitute for her husband on appeal to this court.

such circumstances, her failure to file an additional accrued-benefits claim with the VA should not result in the forfeiture of her right to the compensation due to her husband at the time of his death.[5]  Significantly, the government has suffered no prejudice as a result of the failure to file a claim with the VA because Mrs. Reeves' motion to substitute clearly put it on notice that she intended to seek accrued benefits.

II. *Section 5121A*

Congress recently enacted legislation expressly authorizing an accrued-benefits claimant to substitute for a deceased veteran:

> (1)  If a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending, a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion.

> (2)  Any person seeking to be substituted for the claimant shall present evidence of the right to claim such status within such time as prescribed by the Secretary in regulations.

---

[5]  Claims for accrued benefits must be filed within one year of a veteran's death.  *See* 38 U.S.C. § 5121(c). Given that more than a year has passed since Reeves' death, Mrs. Reeves might forfeit all right to relief if it were determined that her motion to substitute did not qualify as an informal accrued-benefits claim.

(3) Substitution under this subsection shall be in accordance with such regulations as the Secretary may prescribe.

38 U.S.C. § 5121A.[6]   Under this provision, an accrued-benefits claimant can be substituted for a veteran who dies while a "claim" or "an appeal of a decision with respect to such a claim . . . is pending." *Id.* § 5121A(1). In *Breedlove v. Shinseki*, the Veterans Court determined that while section 5121A authorizes substitution in proceedings at the VA, it does not "directly" authorize substitution in cases in which a veteran dies while his case is pending before a court. 24 Vet. App. 7, 8 (Vet. App. 2010) (per curiam). In support, the court noted that the statute refers to a "claimant" and "processing the claim," and that "[t]his language indicates persons and events at the Agency level, not parties to litigation in an appellate court." *Id.* at 11-12. In addition, the court pointed to the fact that section 5121A explicitly provides that substitution will be governed by regulations prescribed by the Secretary of Veterans Affairs and reasoned that "[i]t would be incongruous to charge the Secretary with promulgating regulations that would potentially affect whether" substitution was available in a pending court proceeding. *Breedlove*, 24 Vet. App. at 13.

We need not decide whether the Veterans Court correctly determined that section 5121A does not directly authorize substitution in court proceedings. That issue is moot—at least for purposes of the present appeal—given that we agree with the court's alternative holding, which is that even if section 5121A directly applies only to

---

[6]   Section 5121A applies in cases in which the veteran died after October 10, 2008. *See* Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, 122 Stat. 4145, 4151.

actions pending before the VA, its enactment nonetheless undercuts the rationale for previous decisions that refused to allow a survivor to substitute when a veteran died while his appeal was pending before a court. *See Breedlove*, 24 Vet. App. at 20 ("Since Congress has now created an avenue for an accrued-benefits claimant to continue to pursue a veteran's claim . . . after the veteran's death, the Court henceforth will consider substitution, if requested, in all cases pending before the Court regardless of the stage of briefing at the time of a veteran's death.").

Prior to 1994, the Veterans Court routinely allowed an accrued-benefits claimant to be substituted for a veteran who died while his appeal was pending before the court. *Id.* at 15. In *Landicho,* however, the court reversed course and determined, based upon its interpretation of the "overall statutory scheme" for veterans' benefits, that Congress did not intend to permit substitution:

> The overall statutory scheme . . . creates a chapter 11 disability compensation benefit that does not survive the eligible veteran's death. It is only in the accrued-benefits provisions in section 5121 that Congress has set forth a procedure for a qualified survivor to carry on, to the limited extent provided for therein, a deceased veteran's claim for VA benefits by submitting an application for accrued benefits within one year after the veteran's death.

7 Vet. App. at 47. In the court's view, Congress intended that a veteran's claim would be extinguished upon his death. *Id.* (emphasizing that the statutes authorizing disability compensation for veterans "make[] no provision for survivors"). Because a veteran's claim "died" with him, a survivor could not be substituted on that claim, but was

instead required to begin the lengthy claims process anew by filing his or her own claim for accrued benefits. *Id.* at 47-48.

We sanctioned this approach to substitution in *Zevalkink*. There we held that a surviving spouse had no standing to be substituted for a veteran who died while his appeal was pending before the Veterans Court. 102 F.3d at 1240-42. We concluded that the surviving spouse's claim for accrued benefits was distinct from the veteran's claim for disability compensation, and that "[a]ny delay inherent in pursuing [a separate accrued-benefits] claim . . . does not constitute the kind of actual or threatened injury that confers standing." *Id.* at 1244.

Subsequently, however, we refined our approach to substitution, concluding that a survivor had standing to be substituted for a deceased veteran in situations where substitution was required to protect the survivor's legal interests. *See Padgett*, 473 F.3d at 1366-70. In *Padgett*, a veteran died after his appeal had been submitted to the Veterans Court, but before issuance of the court's judgment in his favor. *Id.* at 1366-67. We determined that it was appropriate to allow the surviving spouse to substitute for her deceased husband and to give her the benefit of the Veterans Court's judgment by issuing that judgment *nunc pro tunc* to the date of the veteran's death. *Id.* at 1369. We explained that failure to give effect to the Veterans Court's judgment would be improper "because it would disregard the otherwise final determination of issues relating to the accrued-benefits claim." *Id.* We concluded, moreover, that the surviving spouse had standing to be substituted on the veteran's appeal because of the "continuing relevance and preclusive effect" that the issues decided in his appeal would have on her own claim for accrued benefits. *Id.* at 1370.

In the wake of *Padgett*, we observed that the right to substitute on appeal was not available in all circumstances. Unless the refusal to allow substitution would adversely affect the accrued-benefits claim, a survivor could not substitute for a deceased veteran, but had to begin the claims process anew by filing a separate accrued-benefits claim. *See Phillips v. Shinseki*, 581 F.3d 1358, 1365 (Fed. Cir. 2009) (concluding that substitution was appropriate where it would "remove[] a significant roadblock from [the survivor's] path to obtaining benefits"). In *Hyatt v. Shinseki*, we concluded that a surviving spouse had no standing to substitute for her husband who died while his appeal was pending before the Veterans Court because her claim for accrued-benefits would not be negatively impacted by the refusal to allow substitution. 566 F.3d 1364, 1369-71 (Fed. Cir. 2009). We explained that regardless of whether or not substitution were allowed, the surviving spouse would not be permitted to rely on evidence not already in her husband's claims file when pursuing her claim for accrued benefits. *Id.* at 1371.

The enactment of section 5121A mandates a shift in our approach to substitution in veterans' cases, because Congress has deemed it both "unfair and inefficient" to require an accrued-benefits claimant to restart the claims process after a veteran's death. H.R. Rep. No. 110-789, at 17 (2008). Congress emphasized that "[a]llowing substitution prevents unnecessary reworking of the same claim, allowing it to move forward from its current state of development to appropriate finality and saves families from facing unnecessary administrative hurdles." *Id.* Significantly, section 5121A specifically provides that an accrued-benefits claimant can be substituted on a deceased veteran's claim for the purpose of processing *the veteran's* "claim to completion." 38 U.S.C. § 5121A(1).

The statute thus makes clear that a veteran's claim is not extinguished by his death. Instead, it survives so that it can be processed "to completion," *id.*, thereby allowing the accrued-benefits claimant to obtain any benefits due and payable to the veteran at the time of his death. *See Padgett v. Shinseki*, 643 F.3d 950, 956 n.5 (Fed. Cir. 2011). As discussed above, the premise of previous decisions refusing to allow substitution was that Congress did not intend for a veteran's claim to survive his death. Because section 5121A rejects that premise, there is no continuing justification for refusing to allow an appropriate accrued-benefits claimant to be substituted for a veteran who dies while his appeal is pending before this court. *See Phillips*, 581 F.3d at 1363 n.1 (stating, in dicta, that section 5121A allows an accrued-benefits claimant to be substituted on a deceased veteran's appeal "as a matter of course"); *Breedlove*, 24 Vet. App. at 20 ("Congress has indicated in enacting section 5121A [that] the veteran's disability benefits claim does not die with the veteran and the accrued-benefits claim by a survivor no longer represents a separate interest that must be separately pursued apart from the veteran's underlying claim for benefits.").

III. *CUE Claim*

Turning now to the merits of the appeal, we reject the government's contention that there is no CUE in the 1983 board decision because the failure to apply section 1154(b) was harmless error. That statute provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged

to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

38 U.S.C. § 1154(b).

Congress enacted section 1154(b) because of its concern that combat veterans faced "major obstacle[s]" when seeking to assemble the medical records necessary to establish that they suffered an injury or disease while in service. H.R. Rep. No. 1157, at 3 (1941). In many instances, medical records do not survive combat conditions. *Id.* Furthermore, due to the exigencies of battle, soldiers may not immediately seek medical treatment for combat-related injuries. *Id.* Accordingly, section 1154(b) allows a combat veteran to use "satisfactory lay or other evidence" to establish that he was injured or incurred a disability while on active duty, even in cases where "there is no official record" that such injury or disability occurred. 38 U.S.C. § 1154(b). The statute, moreover, specifically provides that the VA must "resolve every reasonable doubt in favor of the veteran" when determining whether a combat veteran incurred a particular injury or disability while in active service. *Id.*

Mrs. Reeves argues that if the 1983 board had properly applied section 1154(b), her husband would have been "entitled to a finding that [the] injury to his hearing occurred during combat with the enemy." She further asserts that the board erred by failing to "resolve every

reasonable doubt" in her husband's favor when denying his claim for service-connected benefits.

In response, the government acknowledges that the 1983 board failed to apply the section 1154(b) presumption. It argues, however, that the board was not required to apply that presumption because "the board was able to determine that Mr. Reeves's acoustic trauma was incurred in service by examining official records and lay statements showing that he was a mortarman subject to noise exposure in service."

The fundamental flaw in the government's argument is that it conflates the question of whether Reeves was exposed to acoustic trauma[7] with the issue of whether he suffered permanent hearing loss while on active duty. When Reeves filed his application for service-connected disability compensation, he asserted not only that he had suffered acoustic trauma, but also that this acoustic trauma led to hearing loss while he was in active service.[8] Accordingly, even though the board accepted that Reeves

---

[7]    The American Medical Association defines "acoustic trauma" as "[a] severe injury to the ear caused by a short-duration sound of extremely high intensity such as an explosion or gunfire." American Medical Association Complete Medical Encyclopedia 112 (Jerrold B. Leiken, M.D., & Martin S. Lipsky, M.D., eds., 2003). An acoustic trauma can cause permanent hearing loss, but does not necessarily do so. *Id.*

[8]    In 1982, Reeves submitted a statement to the VA asserting: *"During my service I experienced a hearing loss* due to firing [an] 81 mm mortar and [from] treatment of malaria with quinine. . . . My hearing, especially the right ear, has been deteriorating ever since my active duty." Joint App. 21 (emphasis added). It is clear, therefore, that Reeves contended not only that he had suffered in-service acoustic trauma, but that this trauma led to hearing loss while on active duty.

had suffered acoustic trauma, it was nonetheless required to apply the section 1154(b) presumption to the separate question of whether he also suffered permanent hearing loss while on active duty. In short, although the record contained evidence of the *cause* of Reeves' disability— acoustic trauma from mortar blasts and the drugs used to treat malaria—he still had the right to invoke the section 1154(b) presumption in order to show that he incurred the *disability itself* while in service. *See Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004) (emphasizing the distinction between the cause of a veteran's disability and the disability itself). The board erred, therefore, in concluding that "since evidence of [Reeves'] noise exposure was of record, [use of] the combat presumption was unnecessary."

The situation here parallels that presented in *Dambach v. Gober*, 223 F.3d 1376, 1380 (Fed. Cir. 2000). There, a combat veteran's service medical records showed that he had been treated for tonsillitis and other infections while serving in Vietnam, but he sought to rely upon the section 1154(b) presumption to establish that he had also suffered from another condition, myocarditis, while in service. 223 F.3d at 1378-79. On appeal to this court, the veteran contended that the Veterans Court had "misinterpreted section 1154(b) by refusing to apply it to *any* of his illnesses because there was documentation [in the record] of *some* of his illnesses." *Id.* at 1380. We agreed, explaining that "a combat veteran will receive the benefit of section 1154(b)" when seeking to establish that he suffered from a particular disease or condition while in service, even if the record contains evidence demonstrating that he was treated for other conditions while on active duty. *Id.*

A similar analysis applies here. Simply because the board accepted the fact that Reeves suffered acoustic

trauma in service does not mean that it was not required to apply the section 1154(b) presumption to the separate issue of whether he suffered hearing loss while on active duty. If Reeves had been able to use the section 1154(b) presumption to show that he incurred a permanent hearing disability in service, it presumably would have been far easier for him to establish that there was a nexus[9] between his military service and the severe bilateral sensorineural hearing loss with which he was afflicted after leaving the military. Instead of attempting to establish that the acoustic trauma he suffered while in the military led to hearing loss following his service, Reeves would only have had to show that the hearing disability he incurred in service was a chronic condition that persisted in the years following his active duty. We reject, therefore, the government's argument that the failure by the 1983 board to apply the section 1154(b) combat presumption was merely harmless error.

Finally, we must emphasize that "[s]ection 1154 makes it abundantly clear that special considerations attend the cases of combat veterans." *Jensen v. Brown*, 19 F.3d 1413, 1416 (Fed. Cir. 1994). In denying Reeves' disability claim, we see no evidence that the 1983 board afforded him the benefit of every reasonable doubt on the question of whether his hearing loss was incurred in service. *See* 38 U.S.C. § 1154(b) (requiring that the VA "resolve every reasonable doubt in favor of" a combat veteran when determining whether he incurred an injury

---

[9] Even when the section 1154(b) combat presumption applies, a "veteran seeking compensation must still show the existence of a present disability and that there is a causal relationship between the present disability and the injury, disease, or aggravation of a preexisting injury or disease incurred during active duty." *Shedden,* 381 F.3d at 1167 (footnote omitted).

or condition in service). Of record before the 1983 board were several pieces of evidence indicating that there was a nexus between Reeves' post-service hearing disability and the in-service injury to his hearing. This evidence included: (1) statements from both Reeves and his wife asserting that he had exhibited noticeable hearing impairment soon after he left the military; (2) statements from Reeves' military comrades asserting that he "had to be with his mortars" during several combat offensives and that his hearing could "easily [have been] damaged from the muzzle blast of the 81 mm mortar"; and (3) a statement from Reeves' physician, Dunlap, who stated that he had diagnosed Reeves with bilateral, nerve-type hearing loss in 1962 and that he attributed this hearing impairment to "noise exposure" or treatment with quinine for malaria. On remand, the Veterans Court will have the opportunity to reevaluate, using a correct application of section 1154(b), whether the 1983 board decision denying Reeves disability compensation contains CUE.

## CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed and the case is remanded for further proceedings consistent with this opinion.

### REVERSED and REMANDED

## COSTS

Appellant shall have her costs.

# United States Court of Appeals
# for the Federal Circuit

---

**MARY REEVES (SUBSTITUTED FOR CORBY REEVES),**
*Claimant- Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS
AFFAIRS,**
*Respondent-Appellant.*

---

2011-7085

---

Appeal from the United States Court for Veterans
Claims in Case No. 08-1951, Judge Alan G. Lance, Sr.

---

BRYSON, *Circuit Judge*, dissenting.

Because I do not agree with the court that the 1983
Board of Veterans' Appeals decision denying compensa-
tion for Mr. Reeves's hearing loss contained clear and
unmistakable error, I respectfully dissent.[1]

---

[1]    The court holds that the appellant, Mr. Reeves's
widow, has standing to prosecute this appeal because she
is entitled to the accrued benefits that were due to Mr.
Reeves at the time of his death.  For some reason, which
was not adequately explained, Mrs. Reeves did not follow
the DVA's procedures for establishing her right to prose-
cute an accrued benefits claim such as this one.  However,
the government does not dispute that she is the person

The court concludes that the Board in 1983 committed clear and unmistakable error because it improperly failed to apply the predecessor of 38 U.S.C. § 1154(b) to Mr. Reeves's claim of in-service injury. I disagree. Section 1154(b) eases the requirements for a combat veteran to prove an in-service injury, but it does not alter the separate requirement that the veteran establish a nexus between his in-service injury and his current disability. Because the Board based its 1983 decision on the lack of proof of nexus, rather than the absence of evidence of in-service injury, section 1154(b) had no application to the Board's decision, and the Board's failure to apply section 1154(b) therefore did not constitute clear and unmistakable error.

To establish entitlement to compensation for a present disability, a veteran must demonstrate: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The third element is the so-called "nexus requirement." *Fagan v. Shinseki*, 573 F.3d 1282, 1286 (Fed. Cir. 2009).

Section 1154(b) can assist the veteran in satisfying the second prong of the test—that his or her initial injury was indeed incurred in service—"by liberalizing the methods of proof allowed." *Jensen v. Brown*, 19 F.3d 1413, 1417 (Fed. Cir. 1994). For veterans who "engaged

---

who would be entitled to receive any accrued benefits due to Mr. Reeves. For that reason, I see no purpose to be served by denying her the right to seek benefits because of her failure to comply with the DVA's prescribed procedures, and I do not dissent from the court's decision on that ground.

in combat with the enemy in active service" with the U.S. military, the statute directs the DVA to

> accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other *evidence of service incurrence or aggravation of such injury or disease* . . . notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

38 U.S.C. § 1154(b) (emphasis added).

The statute addresses the manner in which a veteran may prove that he incurred an injury or disease during service. It does not address the question whether that injury or disease is causally related to the veteran's current disability. As both this court and the Court of Appeals for Veterans Claims have repeatedly held, section 1154(b) does not serve to show nexus, i.e., a causal relationship between an in-service injury and a subsequently diagnosed disability. *Davidson v. Shinseki*, 581 F.3d 1313, 1315 (Fed. Cir. 2009) ("[Section] 1154(b) could be used only to show that [veteran] incurred or aggravated a disease during service."); *Boyer v. West*, 11 Vet. App. 477, 478 (1998) (explaining that "section 1154(b) does not relieve the appellant of his obligation to submit competent medical evidence of a nexus between his present hearing loss and his military service" and that lay testimony "cannot provide such medical evidence because lay persons are not competent to offer medical opinions"), *aff'd*, 210 F.3d 1351 (Fed. Cir. 2000); *Caluza v. Brown*, 7 Vet. App. 498, 507 (1995) ("Section 1154(b) deals with the question whether a particular disease or injury was

incurred or aggravated in service . . . not the questions of either current disability or nexus to service . . . ."), *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table).

Here the Board had no need to rely on section 1154(b) and did not do so. It found that Mr. Reeves had established that his initial injury was incurred in service. In fact, it is undisputed that Mr. Reeves was exposed to loud noises as a mortar-man during World War II and that he received a type of malaria medication that can cause a temporary loss of hearing. The Board concluded, however, that Mr. Reeves had failed to show that the injury he incurred in service caused the bilateral nerve-type hearing loss from which he was suffering in 1983. That is a factual determination based on the Board's assessment of the evidence before it. It does not represent a legal error consisting of an erroneous failure to apply section 1154(b).

The majority contends that the Board was required to apply section 1154(b) not only to the issue of in-service injury, but also to the issue of whether Mr. Reeves "suffered permanent hearing loss while on active duty." That analysis, however, conflates the separate requirements to show in-service injury and to show nexus with a current disability. The injury that Mr. Reeves incurred was acoustic trauma, which may or may not lead to permanent hearing loss, as the majority acknowledges. Mr. Reeves was required to show a nexus between his injury and the disability of permanent hearing loss, which the Board in 1983 found he failed to do. Section 1154(b) does not provide that proof of nexus. *Davidson*, 581 F.3d at 1315-16 (section 1154(b) "concerns only whether a disease was incurred or aggravated in service—not whether the disease was the principal or a contributory cause" of the disability); *see also Leonhardt v. Shinseki*, No. 2011-7095,

slip op. at 7 (Fed. Cir. Feb. 21, 2012) (nonprecedential) ("Simply put, section 1154(b) is directed to the issue of 'what happened then'—whether a veteran incurred an injury or disease while on active duty—not to the question of whether a current disability was caused by an earlier in-service injury or disease."); *Dalton v. Nicholson*, 21 Vet. App. 23, 37 (2007) (section 1154(b) "does not alter the fundamental requirements of a current disability or a medical nexus to service"); *Clyburn v. West*, 12 Vet. App. 296, 303 (1999) ("the provisions of section 1154(b) do not provide a substitute for medical-nexus evidence").[2]

The Board's 2008 decision that is on review in this case makes that distinction clear. The Board explained that in its 1983 decision, it had determined that the evidence showed that Mr. Reeves had "incurred acoustic trauma and had received treatment for malaria in service," but that the evidence "did not establish a medical relationship between events in service and the currently diagnosed hearing loss." Addressing section 1154(b) and its implementing regulation, the Board in 2008 stated that "the combat presumption is operative only as to the matter of in-service disease or injury. There must still be

---

[2]    There are instances in which proof of in-service incurrence of an injury may suffice by itself to satisfy the other requirements for compensation. If a servicemember loses a leg in service, for example, proof of the in-service injury would effectively establish both the subsequent disability and the nexus between the disability and the in-service injury. In a case such as this one, however, the proof of nexus is not as clear. Where, as here, the veteran's in-service injury did not necessarily give rise to the disability—in this case, permanent hearing loss—the proof of in-service injury through section 1154(b) does not by itself establish the required nexus between the injury and the later disability.

shown a relationship between acoustic trauma in service and later-diagnosed hearing loss. The combat presumption in no way serves to presumptively fill that gap."

Based on Mr. Reeves's submission of new evidence years later, the DVA concluded that his permanent hearing loss was in fact caused by his in-service injury, and the DVA awarded him disability compensation beginning at that time. However, the fact that the DVA subsequently found Mr. Reeves's disability to have been caused by in-service events, based on a more complete evidentiary showing, does not mean that the Board's earlier decision in 1983 was incorrect in light of the evidence before the Board at that time or that it was the product of legal error. I therefore agree with the Board and the Veterans Court that the 1983 Board decision did not contain clear and unmistakable error.