http://www.va.gov/vetapp16/Files3/1626439.txt

Citation Nr: 1626439 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 13-16 701 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York

THE ISSUE

Entitlement to service connection for left ear hearing loss.

REPRESENTATION

Veteran represented by: New York State Division of Veterans' Affairs

ATTORNEY FOR THE BOARD

C. Fields, Counsel

INTRODUCTION

The Veteran had honorable active duty service in the U.S. Army from January 1968 to August 1969, including combat service in the Republic of Vietnam. 

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from a November 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Buffalo, New York. The RO denied service connection for bilateral hearing loss in the November 2011 rating decision, based on determinations that the Veteran did not have a current right ear hearing loss disability and that there was no link to service for his current left ear hearing loss disability. Then, in a May 2012 rating decision, the RO confirmed and continued this denial. The Veteran limited his appeal to the denial of left ear hearing loss. See July 2012 notice of disagreement; May 2013 substantive appeal (VA Form 9). In April 2015, the Board remanded this matter for further development action.

FINDINGS OF FACT

Any hearing loss that the Veteran experienced during combat service did not develop into a permanent or chronic disability at that time; there was no diagnosis or manifestations to a compensable degree within one year after service discharge or continuity of hearing loss symptomatology after service; and the current hearing loss disability has not been linked to an in-service injury, disease, or incident. 

CONCLUSION OF LAW

The criteria for service connection for left ear hearing loss have not all been met. 38 U.S.C.A. §§ 1110, 1112, 1154(b), 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304(d), 3.307(a)(3), 3.309(a), 3.385 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

Prior to the initial adjudication of the claim, the Veteran was provided full notice in January 2011 as to the requirements and procedures to substantiate his claim. 

The Veteran's service treatment records, identified private medical records that he submitted or provided sufficient authorization for VA to obtain, VA treatment records, and Social Security Administration (SSA) records have been obtained and considered. This includes outstanding VA treatment records since October 2012, as directed in the April 2015 remand. An audiogram report related to an October 2012 VA consult for treatment purposes is not associated with the claims file; however, this is not prejudicial or harmful to the present adjudication because a current disability has already been established as of at least 2007. Thus, the determinative question is whether this left ear hearing loss disability is related to service, which is not addressed in an audiogram. There is no indication that there are necessary outstanding records. 

Further, the Veteran was afforded relevant VA examinations in 2011 and 2015. In the April 2015 remand, the Board found that the October 2011 examiner's opinions were inadequate because there was an indication of possible left ear hearing loss prior to service, which was not discussed. In particular, that examiner did not consider the Veteran's September 1967 service entrance audiometric readings as converted from American Standards Association (ASA) units to International Standard Organization (ISO) units, as required for service department results prior to October 31, 1967, to be compared with more recent readings. As discussed below, the converted pure tone threshold results showed some level of hearing impairment, but they did not meet VA's definition of a hearing loss disability. 

The Board previously directed that a VA examiner give opinions as to whether the Veteran had a preexisting left ear loss disability at service entrance and, if so, whether such disability was aggravated during service, using specific legal standards pertinent to claims where there is a suggestion of preexisting disability. 

The Veteran underwent VA examinations by two different examiners in 2015. A July 2015 examiner could not obtain valid pure tone or speech discrimination scores, but the Veteran's reports as to his noise exposure during this examination are still probative. A September 2015 examiner interviewed the Veteran and provided test results and etiology opinions with supporting rationale.

After the Board's prior remand, the United States Court of Appeals for Veterans Claims (Court) held that hearing loss recorded in a service entrance examination that indicated some degree of impairment, with pure tone thresholds above 20 decibels (dB), but did not meet VA's definition of a "disability" for hearing loss under 38 C.F.R. § 3.385, was not considered a "defect." Thus, the veteran was still entitled to the presumption of soundness upon entry into service under 38 U.S.C.A. § 1111 in such circumstances. McKinney v. McDonald, 28 Vet. App. 15, 22-23, 28 (2016). In light of this holding, the Veteran is presumed to have been sound with regard to hearing loss at the time of his entry into service in September 1967. As in McKinney, he had some level of hearing impairment via test results at his 1967 entrance examination, after conversion to ISO units, but he did not have a noted "defect" or hearing loss disability because he did not meet the disability criteria. 

Thus, "the burden then falls on VA to rebut the presumption [of soundness] by clear and unmistakable evidence that the injury or disease manifested in service was both preexisting and not aggravated by service." Id. at 23 (discussing 38 U.S.C.A. § 1111 and 38 C.F.R. § 3.304). This burden has not been met in this case. First, there is no clear and unmistakable evidence of a preexisting disability, as there were no pre-service audiometric readings or other evidence to show levels of hearing acuity prior to service, and the Veteran denied noticing hearing loss prior to service. It is therefore unnecessary to address the second prong of this burden, i.e., whether any manifestations in service constituted aggravation beyond the natural progression of the disability. As the presumption of soundness has not been rebutted, the issue on appeal is one of service connection based on incurrence. 

Accordingly, although the 2015 VA examiner did not use the language of clear and unmistakable evidence in responding to the questions posed in the prior Board remand, the report and opinions are adequate to address the questions relevant to direct service incurrence. In particular, the examiner addressed the threshold shift between the Veteran's 1967 and 1969 service examinations, and he provided reasons based on medical literature or knowledge for the opinion that the Veteran's hearing loss that manifested many years after service was not related to service. 

The Board notes that the evidence is sufficient to show that the Veteran served in combat with the enemy and, therefore, his lay statements may be sufficient to establish both an in-service injury and incurrence of hearing loss during service. See Reeves v. Shinseki, 682 F.3d 988, 998-1000 (Fed. Cir. 2012) (discussing the combat presumption under 38 U.S.C.A. § 1154(b)). Nevertheless, the Veteran has not asserted that he has had chronic or permanent hearing difficulties continuously since service, with onset during combat or otherwise. Thus, the Veteran's lay statements are not sufficient to establish incurrence of a chronic or permanent hearing loss disability during such service. Further, the VA examiners' opinions are adequate to decide the claim herein on the merits.

In sum, VA satisfied its duties to inform and assist, insofar as any errors committed were not harmful to the essential fairness of the proceedings. No additional notice or assistance would be reasonably likely to aid in substantiating the claims, and the prior remand directives were substantially satisfied. The Veteran has had ample opportunity to participate in the adjudication, and no prejudice has been alleged or shown due to any possible defects. The Board may proceed with the appeal.

II. Claim Analysis

The Veteran contends that his current left ear hearing loss disability is related to in-service noise exposure with acoustic trauma. He describes exposure to gunfire, explosions of tank rounds, landmines, and anti-tank rocket grenades while serving as a reconnaissance specialist with an infantry division during combat in Vietnam. 

Applicable statutes, regulations, and case law provide that entitlement to direct service connection requires three elements: a current disability; an injury or disease during active military service; and a link between the current disability and service to show either incurrence or aggravation of the disability during such service. 

Further, service connection may be granted for sensorineural hearing loss on a presumptive basis as a chronic disability if it manifested and met VA's criteria for a compensable (at least 10 percent) rating within one year after active duty. A nexus between a current listed chronic disability and service may be established by medical evidence or competent lay evidence of continuity of symptomatology.

In this case, the dispositive question is whether there is a link (nexus) between the Veteran's demonstrated current left ear disability and hazardous noise exposure during combat service. As discussed below, this final element has not been shown.

Although the Veteran is competent to report observable symptoms and history, such as when he first perceived difficulty hearing, he has no medical expertise. Therefore, he is not competent to diagnose a hearing loss disability, as opposed to difficulties hearing or understanding conversation due to other causes, because such a diagnosis requires objective testing and medical expertise for interpretation. 

In particular, pure tone thresholds of 20 decibels or below reflect hearing within normal limits. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). Impaired hearing is a VA disability when the auditory (pure tone) threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; when the thresholds for at least three of these frequencies are 26 decibels or greater; or when the speech recognition score using the Maryland CNC Test is less than 94 percent. 38 C.F.R. § 3.385. These criteria do not have to be met during service for service connection. 

Audiometric test results since June 2007, to include in October 2011 and September 2015, have met this VA disability criteria for the Veteran's left ear hearing loss, with at least one pure tone threshold above 40 decibels from 500 to 4000 Hertz.

Further, the Veteran's lay reports are sufficient to establish that he had in-service injury via hazardous noise exposure, despite a lack of complaints or treatment for noise exposure or acoustic trauma during service. This is because he engaged in combat with the enemy, as shown by receipt of a Bronze Star Medal and Army Commendation Medal with "V" Device. His competent reports as to combat noise exposure are credible and consistent with the circumstances, conditions, and hardships of such service. In fact, the Department of Defense has recognized that the Veteran's military occupational specialty of reconnaissance in an infantry division had a high probability of hazardous noise exposure. Thus, the combat presumption applies in this regard. 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d).

The section 1154(b) combat presumption has been interpreted to apply not only to a veteran's reports of exposure to acoustic trauma during combat service, but also to reports of permanent hearing loss that began during such service. See Reeves v Shinseki, 682 F.3d 988, 998-1000 (Fed. Cir. 2012). Thus, if a combat veteran's lay reports establish that "the hearing disability he incurred in service was a chronic condition that persisted in the years following his active duty," then service connection may be granted without the need for a medical opinion to link the current disability to service. Id. at 1000. Clear and convincing evidence to the contrary may rebut incurrence of a chronic condition in service, but reasonable doubt should be resolved in the Veteran's favor. Id.; see also 38 C.F.R. § 3.304(d).

In this case, the Veteran has not reported having had chronic or permanent hearing loss that first manifested during combat, or otherwise during his active service. Instead, the Veteran has contended that his current left ear hearing loss is due to combat noise exposure, asserting that he did not have much post-service noise exposure. 

The Board observes that, in a July 2012 notice of disagreement, the Veteran's representative stated, "It is noted that the Veteran had a hearing loss during his active military service and that it got worse after his discharge." The representative then summarized the Veteran's assertions as to his post-service noise exposure, stated that the Veteran's "main exposure" was during military combat, and stated that "the Veteran believes he should be given the benefit of the doubt that his hearing loss is most likely due to service." 

Similarly, in a substantive appeal received in June 2013, the representative stated, "It was noted by the examiner that [the Veteran] had experienced a slight hearing threshold shift during his military service." The representative then summarized the Veteran's reported combat noise exposure during service, stated that "[t]his reflected acoustic trauma for which [he] did not seek treatment," and discussed the Veteran's post-service noise exposure. The representative went on to assert that "there is enough evidence that his hearing loss is due to his combat service," and that "as a decorated combat Veteran he should be awarded the benefit of the doubt." 

Neither of these statements by the Veteran's representative amounted to a report that the Veteran actually noticed hearing difficulties during combat or other service, or that any such symptoms persisted on a chronic basis since service. Instead, it is apparent that the representative's statements that it was "noted" that the Veteran "had a hearing loss" during service and that there was a "slight hearing threshold shift" during service were summaries of the 2011 examiner's notations, which had been relied upon in the RO denials. Thus, the combat presumption does not extend to incurrence of chronic or permanent left ear hearing loss disability.

Moreover, to the extent that the 2012 statement from the Veteran's representative may be interpreted as an assertion of him having had permanent or chronic hearing loss symptoms since service, there is clear and convincing evidence to the contrary, as discussed below. 

Specifically, the Board has carefully reviewed the Veteran's statements in support of his claim, as well as in his service treatment records and evaluations, for private and VA treatment after service since the 1990s, and for his SSA claim in 2007. Such documents and records contained no reports of any noticeable hearing loss that began during combat service, or of any diagnosis or treatment for hearing difficulties at any time during or close in time to the Veteran's service discharge. 

To the contrary, the Veteran specifically checked "no" to noticing hearing loss at that time or previously in a Report of Medical History for his August 1969 service discharge examination. The Veteran did report experiencing numerous other symptoms or conditions for that evaluation; thus, this record appears complete, and it is reasonable to infer that the Veteran would have checked "yes" for hearing loss if he had perceived any hearing loss or difficulties at that time. Thus, the Veteran's responses on the 1969 evaluation form clearly denied hearing loss. This report was contemporaneous to the time of his separation from service and is highly probative. 

In his December 2010 claim for VA benefits, the Veteran did not identify an onset date for his hearing loss or any dates of treatment. The evidence in the claims file includes his private treatment records dated from the 1990s through 2007, including records obtained from the SSA, and VA treatment records through 2015. 

A December 2006 private record noted that the Veteran had been hunting recently and had ringing his left ear the previous night. Thereafter, in June 2007, the Veteran reported that his wife had complained to him that he had hearing problems. Audiometric testing was conducted, which was interpreted to show bilateral high frequency sensorineural hearing loss, with significant asymmetry in the left ear in higher frequencies. The private provider stated that speech scores were elevated only on the left side. An MRI was ordered to rule out left acoustic neuroma; an July 2007 MRI of the brain with attention to the internal auditory canals was normal. 

The Veteran continued to complain of hearing difficulty to his medical providers after 2007, such as in a September 2010 private treatment session and in an October 2012 VA audiology consult. A private vestibular assessment was normal in 2010. A September 2014 VA treatment record noted that the Veteran was hard of hearing.

There are no available hearing test results between the Veteran's 1969 service discharge examination and his first documented report of hearing difficulties for treatment purposes in 2007, and no treatment records between 1969 and the 1990s. Further, the Veteran has not reported any treatment or evaluation for hearing loss prior to 2007. This lack of records prior to the 1990s, or of documented complaints of hearing loss prior to 2007, does not necessarily establish that the Veteran did not have hearing loss to some degree prior to 2007. This is because the Board must consider all pertinent evidence, including lay reports as to the timing of symptoms.

Nevertheless, as noted above, the Veteran reported for treatment in 2007 that his wife had complained to him about him having hearing problems, and he underwent multiple evaluations to determine the possible cause of his hearing loss at that time. The Veteran did not specify the timing or onset of his noticeable hearing difficulties at that time, although he complained of tinnitus for two months with vague balance problems. The Veteran had previously sought treatment for many other conditions from the 1990s through 2007, including from ear, nose, and throat specialists. He complained of allergic rhinitis, allergies, and lack of coordination or vertigo; but he did not mention any noticeable hearing difficulties prior to June 2007. This was nearly 40 years after the Veteran's combat service and service discharge. 

The Board makes a reasonable inference that, if the Veteran had been having noticeable hearing difficulties on an ongoing basis since his combat service, or for any significant period of time prior to 2007, then he would have reported such symptoms and their longstanding presence to his treating providers at some point from the 1990s through 2007, to include during an ear, nose, and throat consult. The Veteran had an incentive to report an accurate history as to the nature and timing of his symptoms when he sought treatment in order to receive proper medical care. Thus, the information contained in his medical records, as well as the lack of reports of hearing difficulties when they would be expected to have been reported, is highly probative as to the timing of the Veteran's hearing loss symptoms. In addition, as stated above, the Veteran expressly denied having hearing loss at his August 1969 discharge examination, after combat service. 

The Board notes that, in Reeves, there were several pieces of evidence indicating a possible nexus between the claimant's post-service hearing loss disability and his in-service injury to hearing, and the Federal Circuit directed the Board to consider such evidence along with the section 1154(b) combat presumption provisions. 682 F.3d at 1000. In particular, there were (1) statements from both the claimant and his wife asserting that he had noticeable hearing impairment soon after he left the military; (2) statements from the claimant's fellow service members indicating that he was exposed to hazardous noise during combat service and that his hearing "could 'easily [have been] damaged'" from such exposure; and (3) a statement from the claimant's physician indicating that he had diagnosed the claimant with bilateral sensorineural hearing loss in 1962 (which was nearly 20 years after the claimant's service discharge) and attributing this hearing impairment to noise exposure. Id.

There are no lay or medical statements similar to those noted in Reeves in this case. To be clear, to the extent that the Veteran's representative was relaying a report by the Veteran in 2012 that he had hearing loss symptoms during service, such statement is not being rejected due solely to a lack of corroborating medical records. Instead, there is highly probative, specific evidence that directly contradicts such a statement. As such, there is clear and convincing evidence contrary to the possible lay evidence regarding incurrence of permanent or chronic left ear hearing loss during the Veteran's combat service, and the combat presumption is rebutted in this regard. See 38 U.S.C.A. § 1154(b); Reeves, 682 F.3d at 998-1000. 

Similarly, the most probative and persuasive evidence does not show continuity of symptomatology of left ear hearing loss since the Veteran's service, during combat or otherwise. The evidence also does not establish hearing loss to a compensable degree within one year after his service discharge, or by August 1970. Instead, as the Veteran's pure tone thresholds at his 1969 discharge examination did not meet VA's disability criteria, as discussed above, they also did not establish compensable hearing loss. The Veteran also denied hearing loss at that time, and there are no hearing tests dated prior to 2007, nor has the Veteran reported any prior tests. Thus, presumptive service connection is not warranted as a chronic disability in this case.

Because the combat presumption and chronic disability presumptions do not result in service connection in this case, the evidence on a nexus between the Veteran's current disability and his service, to include combat noise exposure, must be at least approximately balanced in order to grant the appeal.

In this regard, although the Veteran and his representative have asserted that the Veteran had little to no post-service noise exposure, there is some evidence to the contrary, particularly as to the period between 2002 and 2007. As noted above, in a December 2006 treatment session, he reported ringing in the left ear after hunting. 

In the June 2007 private session where he first mentioned hearing problems, the Veteran reported being a retired policeman who was working as a groundskeeper, but that he wore protection when operating machinery. Similarly, the Veteran reported in 2007 for his SSA disability claim that he had worked as a child care/ peace officer until 2002, and then as a groundskeeper from 2002 to July 2007. 

In a November 2011 statement for his appeal, the Veteran reported that he hunted but used hearing protection when doing so. During his 2011 and 2015 VA examinations, the Veteran reported that his occupation as a youth aide through 2002 did not involve noise exposure, but that he had past noise exposure through using a cordless drill, hunting, and using a lawn mower, without ear protection at times. 

In a July 2012 notice of disagreement, the Veteran's representative stated that he had no recreational noise exposure for almost 10 years after service discharge. The representative noted that the Veteran had recreational noise exposure at times, but that this did not occur every year and was on a very limited basis. In a May 2013 substantive appeal form, the Veteran's representative again referenced the Veteran's employment as a youth division aide for 34 years, which did not involve exposure to loud noise; and stated that he used hearing protection when he hunted. The representative did not mention any noise exposure through the Veteran's employment as a groundskeeper after his retirement, from 2002 through 2007. 

The 2011 and 2015 VA examiners' reports reflect consideration of the Veteran's prior noise exposure through combat service, as well as occupational and recreational noise exposure such as through hunting and using lawn mowers, to include through 2007. Although the Veteran has reported using hearing protection after service, he also reported that he did not use hearing protection at times. 

As noted above, in light of new case law after the last Board remand, the 2011 VA examiner's opinions were not rendered inadequate by failure to address questions as to the existence or aggravation of a preexisting disability. Instead, the relevant question is whether the current disability was incurred during service. In this regard, the 2011 examiner stated that there was a slight threshold shift during service, but that the Veteran did not meet the VA disability criteria despite such a shift. The examiner also stated that there was a significant threshold shift shown in 2007, after the Veteran's service, but opined that this threshold shift could not have been caused by his military noise exposure approximately 40 years earlier. Thus, this examiner opined that it was less likely than not that Veteran's the current left ear hearing loss disability was caused by or incurred as a result of service. 

Although the 2011 examiner did not consider the 1967 results after conversion to ISO units when comparing those results to the 1969 results, the Board observes that there were higher pure tone thresholds at a few of the levels in 1969 even after such conversion. Thus, the 2011 examiner's statement still has some probative value. 

Upon remand, the September 2015 VA examiner found that there was no significant threshold shift between the Veteran's 1967 and 1969 service evaluations. This examiner explained that VA's Deputy Director of Speech Pathology and Audiology had stated that a change in hearing means there was a significant change in pure tone thresholds that is greater than normal measurement error, meaning 15 dB HL or greater. The examiner further stated that the Institute of Medicine (IOM) had reported in 2006 that "hearing loss from noise injuries occurs immediately following exposure," and that "there was no scientific basis to conclude that permanent hearing loss directly attributable to noise exposure will develop long after such noise exposure." Thus, this VA examiner opined that there was there was "no scientific basis on which to conclude that the [Veteran's] current hearing loss was caused by or the result of military service, to include military noise exposure." 

This 2015 examiner also indicated that there was "no significant threshold shift" between the Veteran's service entrance and exit evaluations. This examiner applied a formula to convert both the 1967 and 1969 recorded measurements into ISO units, but the 1969 results were already in ISO units. This is because those tests were after October 31, 1967, when ISO units were generally used; and there is a report of the audiometric chart for these results service that noted use of ISO units. As a result, the threshold shift during service that was considered by the 2015 VA examiner was not accurate. Nevertheless, the VA examiner provided medical reasoning that defined what is considered a significant threshold shift, i.e., one that shows a change in hearing. This was considered to be a change of 15 db or greater. 

The service evaluations, including after conversion to ISO units as needed, showed: 

September 1967 entrance examination (original)
HERTZ
500
1000
2000
3000
4000
LEFT
15
15
15
-
15

September 1967 entrance examination (converted to ISO units)
HERTZ
500
1000
2000
3000
4000
LEFT
30
25
25
-
20

August 1969 separation examination (original):
HERTZ
500
1000
2000
3000
4000
LEFT
20
15
20
25
25

Thus, there were no shifts in pure tone thresholds of 15 dB or more between 1967 and 1969. In fact, some of the readings actually went down in 1969, after conversion of the 1967 results to ISO units. Moreover, even if the pre-conversion 1967 results were compared to the 1969 results, there was still no change of 15 dB or more between any of the recorded measurements. As noted by the 2015 examiner, these shifts would not constitute a "significant threshold shift," and would not show a change in hearing based on applicable medical knowledge. 

For comparison, the June 2007 private evaluation showed the following results:

HERTZ
500
1000
2000
3000
4000
LEFT
15
20
25
45
50

As noted above, the 2011 VA examiner indicated that these results were a large shift from the Veteran's 1969 service discharge results. This is consistent with the medical citation indicating that a change of 15 dB or greater is considered a significant shift. Additionally, similar to the 2011 VA examiner's statement that the threshold shift in 2007 could not have been due to the Veteran's noise exposure 40 years earlier in service, the September 2015 VA examiner cited to medical studies by the IOM stating that "hearing loss from noise injuries occurs immediately following exposure," and that "there was no scientific basis to conclude that permanent hearing loss directly attributable to noise exposure will develop long after such noise exposure." Thus, the 2015 examiner also opined that there was there was "no scientific basis on which to conclude that the [Veteran's] current hearing loss was caused by or the result of military service, to include military noise exposure." In other words, the current disability was not likely due to injury or disease incurred in service.

These VA medical opinions are highly probative because they were based on a review of all available evidence and application of medical expertise and pertinent medical literature. Further, the examiner's notations and reasoning are consistent with the Board's independent review of the claims file and with the findings herein regarding the timing of the Veteran's chronic and permanent hearing loss disability.

In sum, there is clear and convincing evidence against service incurrence of permanent or chronic hearing loss during the Veteran's combat service, and the preponderance of the evidence is otherwise against service connection for the current left ear hearing loss disability on a direct or presumptive basis. Therefore, the benefit-of-the-doubt doctrine does not apply, and this claim must be denied. 

ORDER

Service connection for left ear hearing loss is denied.

____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs