Citation Nr: 1513859 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 03-27 997 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUES

1. Entitlement to presumptive service connection for diabetes mellitus with end stage renal disease, diabetic retinopathy, peripheral neuropathy, diabetic gastroparesis and coronary artery disease, to include as due to herbicide exposure, for substitution purposes.

2. Entitlement to direct service connection for diabetes mellitus with end stage renal disease, diabetic retinopathy, peripheral neuropathy, diabetic gastroparesis and coronary artery disease, to include as due to herbicide exposure, for substitution purposes.


REPRESENTATION

Appellant represented by: Kenneth M. Carpenter, Attorney

ATTORNEY FOR THE BOARD

C. Jones, Associate Counsel


INTRODUCTION

The Veteran had active military service from February 1969 to November 1970. He died in February 2013. The appellant is the Veteran's surviving spouse.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2002 rating decision of the Department of Veterans' Affairs (VA) Regional Office (RO) in Los Angeles, California, which, in pertinent part, denied diabetes mellitus with end stage renal disease, diabetic retinopathy, peripheral neuropathy, diabetic gastroparesis and coronary artery disease, to include as due to herbicide exposure.

This matter was before the Board in November 2003 and May 2004, on which occasions it was remanded for further development. Thereafter, the Board denied service connection for diabetes mellitus in a November 2005 decision.

In November 2005 and March 2006, the Veteran filed Motions for Reconsideration of the November 2005 Board decision. In June 2006, a Deputy Vice Chairman of the Board granted the Motion to Reconsider and vacated the Board's November 2005 decision. The case was remanded by an expanded panel in July 2009. 

The Board again denied the Veteran's claim of service connection for diabetes mellitus and all secondary conditions in an August 2010 decision. However, in a May 2012 decision, Court of Appeals for Veterans Claims (CAVC) vacated and remanded the claim for readjudication.

Thereafter, in an April 2013 decision, the Board dismissed the claim due to the Veteran's death.

In August 2014, the appellant filed a Request for Substitution of Claimant upon Death of Claimant. The record reflects the appellant has been substituted as the claimant for the purposes of all claims that were pending at the date of the Veteran's death, pursuant to 38 U.S.C.A. § 5121A. See Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110- 389, § 212, 122 Stat. 4145, 4151 (2008) (creating new 38 U.S.C. § 5121A, governing substitution in case of death of a claimant who dies on or after October 10, 2008) (codified at 38 U.S.C.A. § 5121A (West Supp. 2011).

The issue of entitlement to direct service connection for diabetes mellitus is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The weight of the evidence is against a finding that the Veteran had service in Vietnam, and thus, he is not presumed to have been exposed to Agent Orange.


CONCLUSION OF LAW

The criteria to establish presumptive service connection for diabetes mellitus have not been met. 38 U.S.C.A. §§ 1110, 5107(b) (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim, including the degree of disability and the effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

In January 2004 the Veteran was informed of what evidence was required to substantiate his claim, and of the Veteran's and VA's respective duties for obtaining evidence. The Veteran was requested to submit any evidence in his possession and has been afforded a meaningful opportunity to participate effectively in the processing of her claim and given ample time to respond. In a letter dated in March 2009, the Veteran was advised of the evidence necessary to establish a disability rating and effective date as required by Dingess/Hartman. The Board acknowledges that the March 2009 notice letter was issued after the rating decision on appeal. However, as the claim decided herein is denied, neither a disability rating nor an effective date will be assigned. Therefore, the Board finds that the Veteran has not been prejudiced. Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

VA must also make reasonable efforts to assist the appellant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2014).

Service treatment records are associated with the claims file. All post-service treatment records and reports identified by the Veteran have also been obtained. The Veteran has not identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to further assist the Veteran in locating additional records has been satisfied. See 38 U.S.C.A. § 5103A(d); see also 38 C.F.R. § 3.159 (2014).

VA is obliged to provide an examination or obtain a medical opinion in a claim of service connection when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service, and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A (d); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The threshold for finding a link between current disability and service is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83. 

While no VA Compensation and Pension examination has been completed with reference to this claim, the Board finds that no such examination is necessary as this decision only discusses serivce connection on a presumptive basis. Thus, the basis of this determination will be whether the appellant was exposed to herbicides during active duty. Therefore, a VA examination and opinion are not warranted.

The Board finds that the duty to notify and duty to assist provisions of the VCAA have been fulfilled and no further action is necessary under the mandates of the VCAA. Again, while the notice in question was addressed to the Veteran during his lifetime, and not to the substituted claimant, she steps into his shoes in the claims process and thus there is no requirement that the substituted claimant receive another notice letter.

Legal Criteria

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); 38 C.F.R. § 3.303.

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden element, in the case of a listed chronic disease, is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007) (overruled on other grounds); cf. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Id. 

In addition, service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a)-(b).

Veterans who, during active service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence of non-exposure. 38 U.S.C.A. §§ 1116; 38 C.F.R. § 3.307. 

"Service in the Republic of Vietnam" may include service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). It is established law that a veteran must have set foot on the land mass of Vietnam, or have been present in the inland waterways (so-called "brown water" naval activity) of that country during the statutory period in order to be considered to have had qualifying military service in Vietnam and, in turn, presumed exposure to herbicides. See Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008).

The Board may refer to the VA Adjudication Procedure Manual for interpretive guidance. Inland waterways include rivers, canals, estuaries, and delta areas, such as those on which the Vietnam "brown water" Navy operated. VA Adjudication Procedure Manual M21-1MR (M21-1MR), M21-MR, pt. IV, subpt. ii, § 1, ch. H, 28, "Considering Claims Based on Service Aboard Ships Offshore the RVN." As an appendix to that paragraph of the M21-1MR, VA maintains a list of ships which operated primarily or exclusively on Vietnam's inland waterways, ships which operated temporarily on Vietnam's inland waterways or docking to the shore, and ships which operated on Vietnam's close coastal waters for extended periods with evidence that crew members went ashore or that smaller vessels from the ship went ashore regularly with supplies or personnel. See Navy and Coast Guard Ships Associated with Service in Vietnam and Exposure to Herbicide Agents (updated July 2013). Service aboard a ship that anchored in an open deep-water harbor, such as Da Nang, Vung Tau, or Cam Ranh Bay, along the Vietnam coast, does not constitute inland waterway service or qualify as docking to the shore. Id. 

If the Veteran engaged in combat with the enemy, and it is claimed that a disease or injury was incurred in such combat, VA shall accept as sufficient proof of service connection satisfactory lay or other evidence of service incurrence, if the lay or other evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that in such cases, not only is the combat injury presumed, but so are the consequences of that injury at least in service. See Reeves v Shinseki, 682 F.3d 988 (Fed. Cir. 2012).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


Factual Background 

The Veteran contends that his diabetes mellitus is due to Agent Orange exposure during military service. Specifically, he asserts that he had service in country in Vietnam and was exposed to Agent Orange during that time.

VA and private treatment records first noted treatment for and a diagnosis for diabetes mellitus in June 1994.

Service treatment records are negative for treatment for or complaints of diabetes mellitus. 

Military personnel records noted that the Veteran was stationed aboard the USS Cogswell from May 1969 to September 1969, the USS Truxtun in October 1969 and from April 1970 to November 1970, and the USS Hollister from October 1969 to April 1970. His military occupational specialty was seaman apprentice. Additionally, the records indicated that the Veteran served in the contiguous water of Vietnam during the period of October 24, 1969 to November 9, 1969; November 30, 1969 to December 18, 1969; and from February 21, 1970 to March 4, 1970. The records also demonstrated that the Veteran had established eligibility for and received hostile fire pay and tax exemption for the months of October, November and December 1969 and for February and March 1970. Additionally, the records show that the USS Hollister anchored in Poulo Gambir, Vietnam in February 1970 and March 1970.

The Veteran's DD Form 214 reflects that he was awarded the National Defense Service Medal, Vietnam Service Medal and the Vietnamese Campaign Medal.

The Veteran submitted several statements regarding service in Vietnam. In a statement dated in June 1996 in support of his claim of service connection for posttraumatic stress disorder, he reported that while aboard the USS Truxtun in 1969, he shot a man who tried to climb aboard the ship. He also asserted that while serving aboard the USS Hollister the vessel bombarded a village in August 1969 and in September 1969 he engaged in a battle with Vietcong where he was shot in the left side of the forehead, causing a scar. In a December 1996 statement, the Veteran stated that he was not in hand-to-hand combat. In a September 1997 statement, the he asserted that he must have contracted Agent Orange from eating animals, plants and unknown fruit and drinking water in Vietnam, which he did to survive. In a statement dated in January 1998, the Veteran stated that after he was transferred from the USS Truxtun due to overcrowding; he engaged in land battle up to the jungle with Vietcong, both by guns and hand fights. He reported that the soldiers lived in filth with mosquitos and were out of food and had to drink from the dirty river and eat live animals.

During a hearing before a Decision Review Officer (DRO) in January 1999, the Veteran reported that he had ship and shore duty. He denied participating in combat operations, but performed light duty on the shore and witnessed two of his friends get killed while on liberty leave in De Nang, Vietnam. When asked if there was incoming hostile fire, he reported that while he was in Vietnam, he was on aboard a ship that was doing the firing.

In an April 2000 statement, the Veteran stated that he was sent to Vietnam via the USS Truxtun. However, due to overcrowding, he was temporarily assigned to work in a helicopter involved in combat flights due to overcrowding. He reported that he was shot in the forehead at that time. As a result, the pilot landed the helicopter and he was rushed to a medic who treated the injury. He was informed that he would be awarded a Purple Heart, but "they forgot" and he continued fighting. Thereafter, he was transferred to the U.S.S. Hollister where he worked as an armed guard. In a December 2001 statement, the Veteran asserted that he was physically on the ground in Vietnam. He further stated that some details required him to go to fire bases and recover remains and help resupply units. Lastly, in an affidavit dated in January 2003, the Veteran reported that while assigned to the USS Truxtun and the USS Hollister, he went on multiple shore leaves in the Da Nang are in Vietnam and believed that he was exposed to Agent Orange during that time.

A response to a ship history request received in January 2005 noted the USS Hollister was located stateside until it departed in September 1969 for a 6 month deployment to the Western Pacific. During this period, the ship traveled to the Philippines, Vietnam, Thailand, Taiwan and Japan. The ship was assigned to the Positive Identification Radar Advisory Zone stationed in Vietnam for shot gun duty with the USS Mahan and the USS Truxtun from October 25, 1969 to November 6, 1969. The deck logs do not indicate that the ship docked in Vietnam.

In a July 2005 response from the National Archive and Records Administration it was noted that the deck logs would not provide information placing the Veteran aboard the ship nor indicate the names of individuals who departed the ship and might have set foot in Vietnam.

Analysis

At the outset, the Board notes that presumptive service connection based on the finding of a chronic disease is not warranted because the evidence of record shows that the Veteran's diabetes mellitus did not manifest to a compensable degree within one year after his discharge from service in November 1970. 38 C.F.R. §§ 3.307(a) and 3.309(a).

The Board also finds that presumptive service connection due to herbicide exposure is not warranted. In this regard, the evidence shows that the Veteran served aboard the USS Truxtun, USS Cogswell and USS Hollister. However, the ships are not considered to be among the vessels associated with exposure to herbicide agents. While the evidence of record shows that the USS Hollister anchored at various ports in Vietnam, as noted, service aboard a ship that anchored in an open deep-water harbor along the Vietnam coast does not constitute inland waterway service or qualify as docking to the shore. 

Additionally, there is no objective evidence that establishes that the Veteran stepped foot in Vietnam. In so finding, the Board has considered the statements provided by the Veteran regarding service in Vietnam. While he is competent to make such statements, it must be determined if such statement are credible.

In deciding whether the Veteran's reports are credible, the Board considers such factors as possible bias, conflicting statements; internal inconsistency, facial plausibility and consistency with other evidence. Buchanan v. Nicolson, 451 F.3d 1331, 1336-7 (Fed. Cir. 2006); Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see Madden v. Brown, 125 F. 3d 1447, 1481 (Fed. Cir. 1997); (Holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). 

Due to contradictory statements made by the Veteran regarding service in Vietnam, the Board finds the Veteran not credible. The Veteran has provided varying statements regarding service in Vietnam. In a January 1998 statement, he reported that he engaged in land battle, by both hand and gun fight. However, during the January 1999 DRO hearing, he stated that he did not participate in combat operations, but did light duty on the shore. Additionally, in a December 1996 statement, he asserted that he was not in hand-to-hand combat. The Veteran also reported that he was shot in the forehead during combat, which resulted in a scar. However, a review of the October 1970 exit examination report does not demonstrate that the Veteran had a scar on his forehead at separation from military service. The Board finds this to be highly persuasive evidence that the in-service events as characterized by the Veteran are factually inaccurate.

In sum, while the Veteran is competent to report the service in Vietnam, he has provided a number of inconsistent statements regarding the circumstances of such service. Moreover, his statements are not otherwise supported by the record or by official military documents. Therefore, the Board finds the lay statements not reliable in this case. 

The Board also acknowledges that the Veteran was in receipt of combat pay. At the outset, the Board notes that receipt of combat pay does not establish that the Veteran was engaged in combat. See Moran v. Peake, 525 F.3d 1157, 1159 (2008). While the Veteran provided multiple statements regarding his combat experience, as noted above, the Board has found such statements not credible. The Veteran's DD Form 214 reflects that he was awarded a number of medals for his military service. These medals are certainly commendable in their own right, however, none of these awards are sufficient to establish combat service, and thus are insufficient to establish that the Veteran engaged in combat while in Vietnam. See Manual of Military Decorations and Awards (Department of Defense Manual 1348.33-V3, November 2010). As such, receipt of combat pay is not sufficient to establish that the Veteran had service in Vietnam.

In light of the foregoing, the Board finds that the Veteran does not have "service in Vietnam," such that exposure to herbicides may be presumed. 38 U.S.C.A. § 1116(a); 38 C.F.R. §§ 3.307(a)(6)(iii); 3.313(a). Thus, the Board concludes that presumptive service connection for diabetes mellitus is not warranted.


ORDER

Entitlement to presumptive service connection for diabetes mellitus is denied.


REMAND

The Board notes that this decision denied service connection for diabetes mellitus on a presumptive basis. Notwithstanding the foregoing, service connection may still be granted on a direct basis. See Stefl v. Nicholson, 21 Vet. App. 120 (2007); see Combee v. Brown, 34 F.3d at 1042.

In this regard, the Veteran asserted that he may have been exposed to Agent Orange from eating animals, plants and unknown fruit and drinking water in Vietnam. While the Board finds that such statement are not sufficient to establish in foot service in Vietnam for presumptive service connection, the statements must be given consideration in determining whether service connection is warranted on a direct basis. On remand, a VA opinion must be obtained to determine whether the Veteran's diabetes mellitus was caused by eating animals, plants and unknown fruit and drinking water in Vietnam.

Accordingly, the case is REMANDED for the following action:

1. Forward the claims file to a VA examiner for the purposes of obtaining an etiological opinion for the Veteran's diabetes mellitus. After review of the claims folder, the examiner should provide an opinion as to whether it is as least as likely as not (probability of 50 percent or greater) that the Veteran's diabetes mellitus was caused by eating animals, plants and unknown fruit and drinking local water while aboard ship in the waters off the coast of Vietnam.

The examiner should note that the Board has determined that the Veteran did not have in-country service in Vietnam and is therefore not presumed to have been exposed to Agent Orange.

The examiner must provide reasons for any opinion provided. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered.

2. If the benefit on appeal remains denied, the AOJ should issue a supplemental statement of the case. Thereafter, the case should be returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs