# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3469

ALVIN DEMERY,                                                                                          APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS,                                              APPELLEE.

Before DAVIS, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

## O R D E R

Alvin Demery served the Nation honorably in the Armed Forces. On October 3, 2017, the Court received a Notice of Appeal (NOA) in Mr. Demery's name appealing a June 22, 2017, Board of Veterans' Appeals (Board) decision. The NOA was timely filed within 120 days of the Board's decision. Soon afterward, the attorneys who filed the NOA[1] notified the Court that Mr. Demery had passed away. They also filed a motion to substitute Mrs. Katie Demery, the veteran's surviving spouse, as the appellant.

Based on the narrative so far, the procedural posture of the appeal is not all that unusual. Sadly, appellants sometimes die during an appeal and substitution of their surviving relatives is not uncommon. But the matter before the Court today is quite procedurally complex. The problem arises because it turns out that Mr. Demery had actually died on August 15, 2017—after the Board rendered its decision on June 22, 2017, but *before* the NOA was filed on October 3, 2017. Compounding the problem, the attorneys purportedly acting on Mr. Demery's behalf did not notify the Court that Mr. Demery had died before filing the NOA.

The motions judge discovered on his own that Mr. Demery had died before the appeal was filed and directed the parties to address the implications of this fact, including as to this Court's jurisdiction. Mrs. Demery subsequently filed a motion to amend the October 3, 2017, NOA to name her as the appellant and to have that amendment relate back to the date the NOA was filed in Mr. Demery's name. Both the motion to substitute and the motion to amend the NOA are pending before the Court.

In this order we address a series of issues. First, we conclude that the October 3, 2017, NOA, while timely filed, was defective as to Mr. Demery. Simply put, a dead person may not appeal a Board decision. But that does not end the matter. Mrs. Demery argues that the NOA was valid as to her and, even if it was not, the Court should allow her to amend the NOA that was invalidly filed on her late husband's behalf. She continues by requesting that the Court also allow that amendment to relate back to October 3, 2017, making it timely filed. Though we conclude the October 3, 2017, NOA was not valid as to Mrs. Demery, we believe amendment and relation back

---

[1] The attorneys filed the NOA under a limited appearance. *See* U.S. VET. APP. R. 46(b)(2).

are appropriate. In reaching that result, we hold that an eligible accrued-benefits claimant such as Mrs. Demery may appeal a final Board decision on his or her own behalf as both a statutory and constitutional matter. Therefore, we will grant the motion to amend and deny the motion to substitute as moot.[2]

## I.    BACKGROUND[3]

The appellant, Alvin Demery, applied for disability benefits in August 2009 at the North Little Rock, Arkansas, regional office (RO). VA granted him service connection for various conditions, including major depressive disorder, a lower back disability, a chronic right knee strain, and the residuals of a left knee injury. But the RO denied his claim for entitlement to a total disability evaluation based on individual unemployability (TDIU) because he did not have one disability rated at least 60% disabling, nor did he have two or more service-connected disabilities with a combined disability ratings equaling at least 70%.[4] He appealed that denial to the Board, which issued a final decision denying TDIU on June 22, 2017. On the same day, notice of this decision was mailed to the appellant, starting the 120-day period for the appellant to file an NOA under 38 U.S.C. § 7266.

On July 25, 2017, the appellant spoke with staff at the law firm Chisholm, Chisholm and Kilpatrick (CCK).[5] He stated that he wished to retain the firm to appeal the June 22, 2017, Board decision.[6] It appears the firm sent the appellant information about retaining CCK, but he did not return the documents necessary to retain the firm.[7] Despite its attempts, the firm never communicated with the appellant again.[8]

On August 15, 2017, before the 120-day NOA period expired, the appellant died.[9] On October 2, 2017, the movant contacted CCK "to report that her husband recently passed away."[10] Counsel reports that during this conversation the movant "expressed an intent in having CCK represent her in an appeal of the Board's decision" concerning her husband.[11] The next day, October 3, 2017, still within the 120-day NOA period, counsel entered a limited appearance and filed an

---

[2] We add a comment about terminology we will use in this order. We will generally refer to Mr. Demery as the "appellant." Of course, in some sense this is an inaccurate description because we conclude that he could not have appealed the Board's decision after he died. Nevertheless, this description will make it easier to follow our discussion. We will generally refer to Mrs. Demery as the "movant."

[3] We recite the facts as we now understand them to have transpired and largely in chronological order, even though the Court did not know the true state of affairs at all times in this appeal.

[4] *See* 38 C.F.R. § 4.16(a) (2018).

[5] *See* Counsel's May 9, 2018, Affidavit, attached to appellant's Response to Order for Supplemental Brief, ¶ 3. We will refer to this document as "Counsel's Affidavit."

[6] Counsel's Affidavit ¶ 3.

[7] *Id.*

[8] *Id.*

[9] *See* Motion to Substitute Appellant, Appendix 1 (appellant's death certificate).

[10] Counsel's Affidavit ¶ 4.

[11] *Id.*

NOA on behalf of "Alvin Demery," the deceased appellant.[12] The NOA did not mention Mrs. Demery. Moreover, and rather inexplicably, counsel did not inform the Court that Mr. Demery had died.

Nearly 1 month later, on October 30, 2017, counsel entered a general appearance[13] and filed a Notice of Appellant's Death with the Court, stating: "[T]oday [I] learned that [the] appellant, Alvin Demery, passed away on August 15, 2017."[14] After receiving this notice, and following its standard practice, the Court issued an order directing the appellant's counsel to provide a copy of the appellant's death certificate and to show cause why the Board decision should not be vacated and the appeal dismissed.[15]

On November 28, 2017, counsel filed a motion to substitute the appellant's surviving spouse, Katie Demery, for her late husband, as well as the appellant's death certificate.[16] These submissions did not, however, correct the impression in the Notice of Death that counsel had learned of the appellant's death only after filing the NOA on October 3, 2017. Appellant's counsel also did not argue that, in fact, the October 3, 2017, NOA was always meant to have been filed on Mrs. Demery's behalf.

After initially taking no position on the movant's status as an accrued-benefits claimant (that is, a person entitled to receive unpaid monetary benefits owed to a veteran at the time of his or her death[17]), the Secretary filed a supplemental response in which he conceded that the movant qualified as an accrued-benefits claimant and informed the Court that he did not oppose the motion to substitute.[18] Soon after, the motions judge discovered that the appellant had died before his attorneys filed the NOA in his name. Seeing a potential question regarding its jurisdiction, the Court raised the issue with the parties and ordered supplemental briefing. After the Court issued this order, the movant filed a motion for leave to amend or modify the NOA, requesting that the amended notice relate back to the date the NOA was filed in the deceased appellant's name. Oral argument was held on October 29, 2018, to address both the motion to substitute and the motion to amend.[19]

## II. ANALYSIS

The merits of the Board's decision denying TDIU are not now before the Court. Rather, we must address the preliminary question whether the Court has jurisdiction based on the filing of the

---

[12] *See* October 3, 2017, NOA.

[13] The associated fee agreement listed Alvin Demery as the client, but was signed by Katie Demery.

[14] *See* Notice of Appellant's Death (emphasis added).

[15] *See* November 13, 2017, Court Order.

[16] *See* Motion to Substitute Appellant.

[17] *See* 38 U.S.C. § 5121(a).

[18] *See* Secretary's Response to the Court's March 23, 2018, Order.

[19] The Court held oral argument in this matter at Stetson University College of Law in Gulfport, Florida. We thank the Stetson community for hosting the Court and for the hospitality shown to us during our visit.

October 3, 2017, NOA. The Court has an independent obligation to ensure that it has jurisdiction to act.[20] In that regard, the party seeking to invoke the Court's jurisdiction, here the movant, has the burden to establish that the Court has jurisdiction,[21] a showing that must be made by a preponderance of the evidence.[22]

We ultimately conclude that we have jurisdiction. We address the following issues in connection with that determination. First, we consider whether the NOA filed on October 3, 2017, was valid on behalf of the appellant. It was not because he had died before it was filed. However, we then address the movant's argument that she has an independent right to have appealed the Board's decision and that the October 3, 2017, NOA should be deemed to be on her behalf. As to these issues, we conclude that the movant did have a statutory right to appeal the Board decision that arose when her husband died and that she has the requisite constitutional standing to proceed. However, we also conclude that the October 2017 NOA was not valid as to her. And finally, we turn to whether the defect in the October 3, 2017, NOA can be cured by amendment. We hold that it can and that an amendment may relate back to the October 3, 2017, filing. That makes the appeal timely and establishes our jurisdiction.

### A. *The October 3, 2017, NOA was invalid as to the appellant.*

The parties and the Court agree that an NOA may not validly be filed on behalf of a dead person.[23] When a veteran dies, his or her claim does not survive as far as providing benefits to the veteran.[24] In common parlance, the claim *as to the veteran* dies with him or her. A right to benefits continues only as to a qualified accrued-benefits claimant.[25] Thus, the deceased veteran lacks the requisite standing to appeal because there is no longer a right personal to the veteran to vindicate. Though on this question there is no on-point precedent from this Court or the United States Court of Appeals for the Federal Circuit, our conclusion is consistent with widespread and long-standing Federal court practice.[26] As the United States Court of Appeals for the Second Circuit put it, "[a] deceased plaintiff simply no longer has a cognizable interest in the outcome of litigation."[27]

---

[20] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (holding that every Federal appellate court has a special obligation to satisfy its own jurisdiction); *see also Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996); *Posey v. Shinseki*, 23 Vet.App. 406, 407 (2010).

[21] *Reed v. Principi*, 17 Vet.App. 380, 382 (2003); *Clark v. Principi*, 15 Vet.App. 61, 63 (2001).

[22] *Clark*, 15 Vet.App. at 63.

[23] *See* Appellant's Response to Order for Supplemental Brief at 3; Appellee's Memorandum of Law in Response to the Court's April 11, 2018, Order at 2-5.

[24] *See* 38 U.S.C. § 5112(b).

[25] *See Breedlove v. Shinseki*, 24 Vet.App. 7, 20 (2010) ("[A] veteran's chapter 11 disability benefits claim survives the death of the veteran, not for the purpose of providing VA benefits to a veteran, but for the purpose of furthering the claim of an eligible accrued-benefits claimant.").

[26] *See, e.g., In re Engle Cases*, 767 F.3d 1082, 1110-20 (11th Cir. 2014); *Billino v. Citibank*, 123 F.3d 723, 725-27 (2d Cir. 1997); *Adelsberger v. United States*, 58 Fed. Cl. 616, 618-19 (2003); *Banakus v. United Aircraft Corp.*, 290 F. Supp. 259, 260 (S.D.N.Y. 1968); *Pasos v. East. S.S. Co.*, 9 F.R.D. 279, 280-81 (D. Del. 1949).

[27] *Billino*, 123 F.3d at 725.

Our conclusion that the October 3, 2017, NOA was invalid as to the appellant would normally end the matter. However, the movant, while conceding that the *appellant* lacks the ability to appeal, argues that the October 3, 2017, NOA was actually filed on *her* behalf. In this regard, the movant first asserts that the October 3, 2017, NOA is valid on its face as to her. Alternatively, she contends that the Court should allow her to amend that NOA to reflect that she was the true appellant and allow that amendment to relate back to the original filing date.

But before we can address these arguments on the October 2017 NOA, the Court must consider an antecedent question. We must decide whether an accrued-benefits claimant such as the movant has an independent right to appeal a Board decision issued on behalf of a now-deceased veteran. If such a person could not independently appeal, the movant's arguments are irrelevant.

*B. An accrued-benefits claimant may independently file an appeal of a Board decision issued to a now-deceased veteran.*

For an accrued-benefits claimant to independently appeal a Board decision, there must both be a statutory basis on which to do so[28] and the person must have constitutional standing to appeal.[29] Because in the context of Mrs. Demery's case these issues are so closely related, we largely address them together.

The Court's authority to adjudicate appeals is governed by 38 U.S.C. §§ 7252(a) and 7266(a). As relevant to the question we face, section 7252(a) provides over *what* we have jurisdiction while section 7266(a) describes *who* may engage that jurisdiction. As to what, section 7252(a) establishes that the Court "shall have exclusive jurisdiction to review decisions of the [Board.]"[30] As to who may seek review of such a Board decision, section 7266(a) states that "*a person adversely affected* by such a decision" may file an NOA.[31] The statutory question here is whether an accrued-benefits claimant such as the movant is "a person adversely affected" by a Board decision denying benefits to a veteran who has died. The answer to that question addresses the constitutional query as well because if one is "adversely affected" by a Board decision this is a sufficient injury to establish a case or controversy and thus standing. As the Court has recognized, the "requirement of aggrievement [in 38 U.S.C. § 7266(a)] echoes the standing requirement that a party must 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the [appellee].'"[32]

---

[28] *See* 38 U.S.C. § 7266(a).

[29] As a matter of policy, the Court adheres to Article III's "case or controversy" requirements including the standing doctrine. *See, e.g., Am. Legion v. Nicholson*, 21 Vet.App. 1, 34 (2007) (en banc); *Mokal v. Derwinski*, 1 Vet.App. 12, 14-15 (1990). To have standing, a party must demonstrate an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)).

[30] 38 U.S.C. § 7252(a).

[31] 38 U.S.C. § 7266 (a) (emphasis added).

[32] *Landicho v. Brown*, 7 Vet.App. 42, 49 (1994) (quoting *Waterhouse v. Principi*, 3 Vet.App. 473, 475 (1992), (quoting *Valley Forge Christian College v. Am. United for the Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982))); *see also Breedlove*, 24 Vet.App. at 16 (discussing the overlap between section 7266(a) and constitutional standing doctrine).

5

As we will explain, we conclude that an accrued-benefits claimant such as the movant is "a person adversely affected" by a Board decision that denied benefits to the deceased veteran on whose his or her accrued-benefits status is based. But we also recognize we are not writing on a blank slate. Nearly 2 decades ago, the Court held in *Kelsey v. West* that such an accrued-benefits claimant could not independently appeal such a Board decision.[33] *Kelsey* noted that such a claimant was not aggrieved by the Board decision concerning a deceased veteran and, therefore, lacked standing.[34] But *Kelsey* does not resolve the issue before us today. We conclude that our 2010 *Breedlove* decision makes clear that the rationale on which *Kelsey* was based has been fundamentally undermined.[35] So, we turn to *Breedlove*.

In 2008, Congress added what is now section 5121A to title 38 of the United States Code.[36] That statutory provision allowed a person eligible to file a claim as an accrued-benefits claimant to be substituted in an administrative appeal before VA when a veteran had died.[37] The *Breedlove* Court concluded that section 5121A did not apply to substitution before a judicial body.[38] But we also realized that the logic underpinning section 5121A fundamentally altered the rationale for the Court's then-current practice of rejecting substitution in cases in which the matter was pending at the Court and had not yet been submitted for decision.[39]

The 2010 Court in *Breedlove* concluded that "no rationale now exists for foreclosing the opportunity for substitution on appeal at this Court based on the timing of the death of the veteran." [40] The Court noted that through section 5121A Congress created the option for substitution until the date of the Board decision. If the Court continued to follow its precedent, we reasoned, it would create a "zone of no substitution" during which the accrued-benefits claimant could not pursue the appeal merely based on when the veteran died.[41] In other words, the Court recognized the inherent inequity that would flow from substitution rights being tied to the happenstance of the timing of a veteran's death, an inequity at odds with what Congress did in enacting section 5121A. Thus, the Court authorized substitution in all stages of appeals at the Court much as if section 5121A applied.[42] And in 2012, the Federal Circuit in *Reeves v. Shinseki* allowed

---

[33] 13 Vet.App. 437, 438 (2000).

[34] *Id.*

[35] 24 Vet.App. 7 (2010).

[36] *See* Pub. L. No. 110-389, title II, subtit. A, § 212(a), 122 Stat. 4151 (Oct. 10, 2008).

[37] 38 U.S.C. § 5121A; *see Reeves v. Shinseki*, 682 F.3d 988, 995 (Fed. Cir. 2012); *Breedlove*, 24 Vet.App. at 10-14.

[38] *Breedlove*, 24 Vet.App. at 11-14.

[39] *Id.* at 15-21. A matter was deemed "submitted for decision" when one of the following occurred: "(1) [T]he filing of the appellant's reply brief, (2) the expiration of the time to file a reply brief, or (3) the filing of a waiver of the right to file a reply brief." *Pekular v. Mansfield*, 21 Vet.App. 495, 505 (2007).

[40] *Breedlove,* 24 Vet.App. at 19.

[41] *Id.* at 19-20.

[42] *Id.* at 20.

substitution in matters before that court on the same basis.[43] In doing so, the Federal Circuit stated that it agreed with our holding in *Breedlove* that the enactment of section 5121A "undercuts the rationale for previous decisions that refused to allow a survivor to substitute when a veteran died while his appeal was pending before a court."[44]

Of course, neither *Breedlove* nor *Reeves* is directly on point with respect to the question we address today. In both those cases, the veteran passed away after filing an NOA commencing judicial proceedings.[45] Here, Mr. Demery died after the Board issued its decision but before judicial proceedings began. But we don't see why that timing question matters given the rationale of both these cases. Under *Breedlove*, the Court was concerned with a "no substitution" zone at the judicial appellate stage given that Congress extended rights to accrued-benefits claimants in section 5121A. If anything, the situation before us poses the problem even more dramatically. If Mr. Demery had died before the Board decided his case in June 2017, Mrs. Demery could have substituted into the administrative appeal.[46] And if he had died after an NOA was filed at this Court, she could have been substituted into the judicial appeal here.[47] If we held that there were no means to advance her own interest in her husband's claim simply because he died between these two points in time, that is, between the issuance of the Board decision and the filing of the NOA, we would adopt the functional equivalent of the zone of no substitution *Breedlove* rejected. To be sure, we are not technically dealing with substitution as there is no appeal in which to substitute before an NOA has been filed. But this seems a distinction without a difference given *Breedlove* and *Reeves*.

It is also significant that both *Breedlove* and *Reeves* specifically addressed then-existing caselaw that supported the no-substitution rule.[48] Of particular relevance, these decisions discussed this Court's *Landicho v. Brown,* 7 Vet.App. 42 (1994), and the Federal Circuit's *Zevalkink v. Brown*, 102 F.3d 1236 (Fed. Cir. 1996).[49] Both decisions determined that under then-existing law, an accrued-benefits claimant was not adversely affected by a Board decision concerning a veteran on whose behalf the accrued-benefits status was based and, therefore, lacked both a statutory and constitutional bases to appeal.[50] In *Breedlove*, this Court concluded that Congress's enactment of section 5121A had undermined the "common foundation" of these decision.[51] The Federal Circuit agreed.[52] What is significant about this recognition is that the Court in *Kelsey* relied heavily on both *Landicho* and *Zevalkink* to support its conclusion that an accrued-benefits claimant could not file an independent appeal of a Board decision after a veteran had

---

[43] *Reeves*, 682 F.3d at 995-97.

[44] *Id*. at 996.

[45] *See Reeves*, 682 F.3d at 992; *Breedlove*, 24 Vet.App. at 8.

[46] 38 U.S.C. § 5121A.

[47] *See Breedlove*, 24 Vet.App. at 11-14.

[48] *Reeves*, 682 F.3d at 996; *Breedlove*, 24 Vet.App. at 15-19.

[49] *Reeves*, 682 F.3d at 996; *Breedlove*, 24 Vet.App. at 15-19.

[50] *See, e.g., Zevalkink*, 102 F.3d at 1243-44; *Landicho*, 7 Vet.App. at 47-48.

[51] *Breedlove*, 24 Vet.App. at 19.

[52] *Reeves*, 682 F.3d at 996.

died.[53] So, the foundation on which *Kelsey* was built has eroded. As the Court did in *Breedlove* with precedent at odds with its substitution ruling*,* we conclude *Kelsey v. West* is inconsistent with the law as it stands today concerning whether an accrued-benefits claimant may appeal a Board decision under the facts before us.

We further hold now that an eligible accrued-benefits claimant has standing, both as a statutory and as a constitutional matter, to file an appeal on his or her own behalf when a veteran dies during the time permitted to file an NOA.[54] This right arises upon the death of the veteran. Because Congress granted accrued-benefits claimants the right to advance a deceased veteran's appeal on the claimant's own interest, the Court sees no reason to distinguish between the standing necessary to substitute into an existing appeal and the standing necessary to initiate an appeal by filing an NOA. Therefore, an eligible accrued-benefits claimant qualifies as a "person adversely affected" by a final Board decision under section 7266 and has a sufficient injury to support standing under Article III of the Constitution.

We briefly comment on the procedure to be followed to commence proceedings in these types of appeals, at least until the Court adopts specific rules on this topic. When a veteran dies after the Board issues an adverse decision but before an NOA has been filed, a person claiming to be an eligible accrued-benefits claimant wishing to appeal should, within the 120-day appeal period, file an NOA in the accrued-benefits claimant's name and a separate statement providing the veteran's name, the date of the veteran's death, and a request that the Secretary address the person's accrued-benefits status.[55] This statement should also include a copy of the veteran's death certificate or a statement why the death certificate is not yet available. These steps will ensure that the Court is aware of the true nature of the proceeding as well as provide information to the Secretary sufficient to locate the relevant Board decision.[56]

---

[53] *See Kelsey*, 13 Vet.App. at 438. We note that *Kelsey* also relied on *Smith v. Brown*, 10 Vet.App. 330 (1997) and *Swanson v. West*, 13 Vet.App. 197 (1999). *Id*. These cases also no longer support *Kelsey*. *Swanson* is similar to *Landicho* in that it concerned dismissal of a judicial appeal after a veteran died. 13 Vet.App. at 199. *Smith* concerned substitution before the Board, a matter that section 5121A has specifically abrogated. 10 Vet.App. at 334.

[54] We also note that once one reaches this conclusion, the Court's rules provide for a person in the movant's position to independently file an NOA. *See* U.S. VET. APP. R. 43(a) ("If a party entitled to appeal dies before filing a Notice of Appeal, any person permitted by law to do so may file within the time limit in Rule 4."). Of course, this rule does not answer the question we have addressed because it would only apply once one determined that a person such as the movant was a person to whom the law applied . We do so today.

[55] Preferably, the NOA and this statement should be filed simultaneously to ensure that the appeal is processed most effectively. If the documents are not filed simultaneously, however, the person claiming to be the accrued-benefits claimant should file both documents within the 120-day appeal period.

[56] We do not purport today to resolve every question about how our holding will be applied in the future. For example, substitution in the *Breedlove* context requires a VA determination that a person is eligible to be an accrued-benefits recipient or a secretarial concession on that point. *See* 24 Vet.App. at 20-21. And the Federal Circuit has made clear that substitution can occur when it is "undisputed" that a person qualifies. *See Reeves*, 682 F.3d at 993. How such concepts will play out in the independent appeal context will be determined over time. In this appeal, the Secretary has conceded that the movant is an eligible accrued-benefits recipient. *See* Secretary's Response to the Court's March 23, 2018, Order.

### C. *The October 3, 2017, NOA was invalid as to the movant.*

Having concluded that an accrued-benefits claimant has standing to independently appeal a Board decision, we next address the movant's other arguments. We begin with the assertion that the October 3, 2017, was facially valid as to the movant.

There is an important point of agreement between the parties: the October 3, 2017, NOA was filed within the 120-day appeal period.[57] Thus, whatever its flaws may be, the NOA was not late if one assumes it was filed on the movant's behalf. However, there are problems with the movant's arguments that this NOA was facially valid as to the movant.

We begin with certain technical problems. To qualify as an NOA, a filing must comply with Rule 3(c) of the Court's Rules of Practice and Procedure, which states that an NOA

> (1) should show the name, address, and telephone number of the person or persons making the appeal and the appropriate [VA] claims file number; (2) shall reasonably identify the Board decision appealed from and be capable of being reasonably construed, on its face or from the surrounding circumstances, as expressing an intent to seek Court review of that decision; and (3) if filed by a representative must . . . be accompanied by [a notice of appearance and its attachments].[58]

The Court has held that correspondence received from a claimant within the 120-day period will not count as an NOA unless it contains these attributes.[59] And though the substance of a valid NOA need not be presented in any particular form, or expressly state that it is an appeal of a final Board decision, it must contain the essential information Rule 3 requires and clearly demonstrate that the claimant is seeking Court review.

Under Rule 3, the October 3, 2017, NOA is invalid as to the movant. Nowhere does the document list "Katie Demery" as the party seeking review or refer to her at all. The only person named is the appellant, "Alvin Demery." Because, as we have discussed above, the only "claimant" identified within the four corners of the NOA had no standing to appeal, the NOA does not "show the name . . . of the person or persons making the appeal" and is therefore missing an "essential element."[60] It's true that the word "should" in Rule 3 is not necessarily mandatory. But as a practical matter, without the name of the person on whose behalf the appeal is filed, it is not possible to truly process the appeal. Take this case as an example. There is no way anyone could possibly have been able to tell that Mrs. Demery was in the picture, or even whether there was a "Mrs. Demery." The Court recognizes that in post-NOA correspondence, Mrs. Demery's attorney submitted a VA form

---

[57] *See* 38 U.S.C. § 7266(a) (2018). The Board mailed its decision on June 22, 2017. *See* R. at 2. The appeal period would have expired on October 20, 2017, 120-days later. Because the NOA was filed within that period (on October 3, 2017), it is timely.

[58] U.S. Vᴇᴛ. Aᴘᴘ. R. 3(c).

[59] *See Garillos v. Derwinski*, 2 Vet.App. 238 (1992).

[60] *Id*. at 240.

stating she was Mr. Demery's spouse;[61] however, the Court did not have this document, and thus knowledge of his spouse, when the NOA was submitted in Mr. Demery's name.

Even if we concluded that the NOA did not need to state the name of the person on whose behalf the appeal was filed, the NOA fails to satisfy a separate requirement of Rule 3(c). The Rule provides that the NOA must have been filed by the movant personally, or by her representative.[62] But the movant did not retain the appellant's counsel until weeks after the NOA was filed.[63] The Court's rules state that if an NOA is filed by a legal representative then it must be accompanied by a notice of appearance and other necessary attachments, such as a fee agreement.[64] Because no such attachments were filed that relate to the movant, Katie Demery, the NOA could not have been validly filed for her under Rule 3(c).

Aside from these technical, but nevertheless important, issues under Rule 3(c), the Court also has practical concerns regarding treating the October 3, 2017, NOA as validly filed on the movant's behalf. Quite frankly, the timeline of events detailing when the appellant's death became known to the appellant's counsel is problematic. The appellant's counsel filed the Notice of Appellant's Death on October 30, 2017, stating that he did not know the appellant had died until that day.[65] If the appellant's counsel is taken at his word, then he did not know the appellant had died until nearly a month after filing the NOA. If this is the case, the movant cannot reasonably argue that the NOA was filed on her behalf because counsel would not have known of the appellant's death when the NOA was filed.

The appellant's lead counsel later submitted an affidavit in which he attested that his firm, CCK, submitted the NOA knowing the appellant had died.[66] He also stated that the NOA "was filed under the veteran's name because [CCK was] following the pattern set by the Board decision [that the firm was] appealing, and because Katie Demery had not yet been substituted."[67] The affidavit does not address counsel's previous statement that the firm did not learn of the appellant's death until nearly a month after the veteran died. As to that matter, at oral argument, counsel for the movant suggested that perhaps the reference in the Notice of Death was the result of using a standard CCK form and that its boilerplate language was not proofread.[68] That is certainly plausible. But even then, we get to the motion to substitute. If the movant's position were correct that the October 2017 NOA was filed on her behalf, there would have been no need to "substitute" her. The proper course would have been to file a motion at that point to correct that NOA. In the end, there is simply too much confusion concerning on whose behalf the October 3, 2017, NOA

---

[61] *See* Motion for Leave to Amend or Modify the NOA, Appendix 1.

[62] U.S. Vet. App. R. 3(c); *see also Am. Legion*, 21 Vet.App. at 7.

[63] *See* Counsel's Affidavit ¶¶ 2-3.

[64] U.S. Vet. App. R. 3(c).

[65] *See* Notice of Appellant's Death at 1.

[66] *See* Counsel's Affidavit ¶ 2.

[67] *Id*. ¶ 4.

[68] Oral Argument at 6:45-7:30, *Demery v. Wilkie*, U.S. Vet. App. No. 17-3469 (argued Oct. 29, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

was actually filed. Thus, we cannot conclude that the NOA was valid on its face with respect to the movant, even if we were at liberty to ignore the technical defects we have identified.

Before turning to the movant's arguments concerning amendment, we pause to underscore that the Court was not well served by the way in which counsel for the appellant (or the movant, or both) communicated with respect to this appeal. While the Court does not read any bad intentions into the counsels' action, we stress that we expect more of representatives appearing before us. If before filing the NOA the appellant's counsel knew his client had died, then counsel bore a duty to notify the Court of that fact. If the Notice of Death provided inaccurate information, counsel needed to correct it. And if there was no need to "substitute" the movant because the appeal was always filed on her behalf, counsel needed to tell the Court of this fact. Not only is effective and accurate communication a general requirement of the legal profession,[69] but our caselaw also imposes on the parties an affirmative duty to "notify the Court of developments that could deprive the Court of jurisdiction or otherwise affect its decision."[70] If proper communication had occurred, this dispute may very well have been avoided entirely, or at least resolved sooner. Enough said on this matter. We trust counsel will take these words to heart.

### *D. The October 3, 2017, NOA may be amended and that amendment may relate back to the original filing date.*

We explained above that, though timely, the October 3, 2017, NOA is invalid concerning the movant. We now consider whether such an invalidity in a timely filed NOA may be cured by amendment. We conclude that it may.

The Court's rules do not offer any guidance on the amendment of an NOA. Nor do the Federal Rules of Appellate Procedure. Indeed, an NOA for a Federal matter of general jurisdiction is filed with and ruled upon by the district court, not the appellate court. Thus, as we have done before when considering amendments of documents, we look to the Federal Rules of Civil Procedure.[71] The Supreme Court of the United States has recognized that those rules embody a fundamental principle favoring the resolution of actions on the merits.[72] With respect to amendments, this guiding norm is reflected in Rule 15, providing that a "court should freely give leave [to amend] when justice so requires."[73] To implement this pro-amendment approach, the Supreme Court has made clear that leave to amend should be given in the absence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."[74] Using these guideposts, while

---

[69] *See* MODEL RULES OF PROF'L CONDUCT R. 3.3 (AM. BAR ASSN'N 2018).

[70] *Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013) (citing *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J. concurring)).

[71] *See, e.g.*, *Monk v. Shulkin*, No. 15-1280, 2018 U.S. App. Vet. Claims LEXIS 61 (Jan. 12, 2018).

[72] *See, e.g.*, *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014); *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

[73] FED. R. CIV. P. 15(a)(2); *see also Foman*, 371 U.S. at 182 (recognizing the purpose of liberal amendment and its limitations); *FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995) (court should be guided by the underlying liberal-amendment purpose reflected in Rule 15).

[74] *Foman*, 371 U.S. at 182; *see also A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1158 (Fed. Cir.

recognizing that they do not constitute an exhaustive list of factors to consider, we conclude amendment is appropriate here.[75]

Turning first to delay, we see nothing in this record to suggest that amendment should be denied on that basis. The motion to amend was filed within months of the original NOA. Moreover, during this time the parties and the Court were actively considering how to address the situation at hand, including what to do about the pending substitution motion. Given all this, and as the Secretary has not suggested he believes there was undue delay, there is no impediment to amendment.[76] Relatedly, there have been no failures to cure defects through prior amendments, something that can add to delay.

As we described above, the facts surrounding the filing of the NOA in October 2017 are muddy and do not reflect well on counsel's duty to communicate with the Court. But as we also made clear, we do not question counsel's motives. And the Secretary has not suggested that there has been any bad faith. Thus, this factor also cuts in favor of allowing an amendment.

A particularly important factor in the amendment analysis is prejudice to the non-moving party, here the Secretary.[77] We see no prejudice to the Secretary if we allow the amendment. And the Secretary does not assert that there would be any. Almost nothing has taken place in this appeal beyond proceedings related to the motions to substitute and amend. Granting leave to amend will simply allow the appeal to proceed in the normal course that it would have followed if the appellant were alive today. Because the original NOA gave the Secretary notice that the Board decision in question was being appealed, an amendment changing the appealing party is not prejudicial.[78]

Finally, allowing the amendment would not be futile. Indeed, it would serve to advance the general goal of resolving matters on their merits. In sum, then, the factors referenced in *Foman* point towards allowing amendment.

Concluding that an amendment is appropriate does not fully resolve the question. If we just allowed the NOA to be amended as of the date the motion to amend was filed—May 10, 2018—the appeal of the June 22, 2017, Board decision would be untimely. This leads us to consider whether the amendment may relate back to October 3, 2017—the date the NOA was filed—which would make it timely.

Once again, we turn to the Federal Rules of Civil Procedure for guidance. Rule 15 also discusses when an amendment to a pleading should relate back to the date of the original filing. As

---

2014) (following *Foman* formulation).

[75] As we noted in *Monk*, some Federal courts after *Foman* have used factors in addition to those the Supreme Court cited. *See Monk*, 2018 U.S. App. Vet. Claims LEXIS 61 at, *6 n.6. We decline here to opine on what additional factors, if any, concerning amendment might be appropriate in other contexts.

[76] *See id*. at *7-*9 (discussing delay in the context of amendment).

[77] *See, e.g., Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 (4th Cir. 2010); *Johnson v. Methodist Med. Ctr. of Ill*., 10 F.3d 1300, 1303 (7th Cir. 1992).

[78] *See Monk*, 2018 U.S. App. Vet. Claims LEXIS 61 at *10-*12 (discussing prejudice in the context of amendment).

relevant to this appeal, it states that an amendment relates back to the date of the original filing when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[79] The movant's amendment to replace the appellant with herself as the interested party changes nothing about the underlying claim. Her interest arises out of the same occurrence that gave rise to the appellant's interest. As the Court in *Breedlove* held: "An eligible accrued-benefits claimant is 'adversely affected' by the appealed Board decision denying a veteran's claim for benefits . . . because he or she is affected by the VA adjudications on the veteran's claim in the same way the veteran was affected . . . ."[80] Therefore, her amendment will relate back to the filing of the NOA and ensure that the Court has jurisdiction at the "commencement of and [] throughout" the appeal.[81]

Finally, we note that our decision to allow the amendment here and provide for its relation back are bolstered by the nature of our jurisdictional statute. The Supreme Court has made clear that the 120-day appeal period, while "an important procedural rule," is not jurisdictional.[82] This pronouncement starkly contrasts with the jurisdictional constraints in the Federal Rules of Appellate Procedure, under which an amended NOA filed after the 60-day appeal deadline is explicitly invalid as untimely.[83] Thus, we have more flexibility to forgive late filings through doctrines such as equitable tolling than we would if we had more significant jurisdictional constraints.[84] The amendment and its relation back fit comfortably with the Supreme Court's understanding of the nature of our jurisdiction.

In sum, Katie Demery has both statutory and constitutional standing to file an NOA as to the June 2017 Board decision. Based on the circumstances in her case, the Court will allow her to amend the NOA to reflect her name, rather than her late husband's, and for that amendment to relate back to the original filing date. Therefore, the NOA is timely filed and Mrs. Demery may pursue her appeal at the Court.

Upon consideration of the foregoing, it is

ORDERED that the motion for leave to amend or supplement Notice of Appeal is granted. It is further

ORDERED that the Clerk of the Court amend the caption in this matter to reflect that the appellant is "Katie Demery." It is further

---

[79] FED. R. CIV. P. 15(b)(1)(B).

[80] *See Breedlove*, 24 Vet.App. at 20.

[81] *Norvell v. Peake*, 22 Vet.App. 194, 200 (2008).

[82] *See Henderson v. Shinseki*, 562 U.S. 428, 441-42 (2011).

[83] *See* FED. R. APP. P. 3(c)(1)(A); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 668 (2d Cir. 2013) (holding that the court would only consider the text and caption of the original timely NOA because the amended notice naming a new appellant was not filed until beyond the 60-day limit).

[84] *See, e.g., Bove v. Shinseki*, 25 Vet.App. 136 (2011) (per curiam order). As a note, the Court does not find that equitable tolling applies here. Rather, we mention it only to illustrate that the Court has a less stringent standard for accepting NOAs.

ORDERED that the motion to substitute party is denied as moot. And it is further

ORDERED that the appellant file her brief within 60 days of the date of this order.

DATED: January 17, 2019                                                    PER CURIAM.